2009 OK 48

**Richard BOWMAN and Dana Bowman, Plaintiffs/Appellants**

v.

**Michael PRESLEY; Heidi Presley; Linda Presley and Century 21 Bob Crothers Realty, Inc., Defendants/Appellees.**

No. 105,727.

Supreme Court of Oklahoma.

June 30, 2009.

Jeff L. Hartmann, Kerr, Irvine, Rhodes & Ables, Oklahoma City, OK, for Plaintiffs/Appellants.

Jon D. Flowers, Shawnee, OK, for Defendants/Appellees Michael and Heidi Presley.

Hugh A. Baysinger, Kimberly A. Stevens, Pierce, Couch, Hendrickson, Baysinger & Green, for Defendants/Appellees Century 21 Bob Crothers Realty, Inc. and Linda Presley.[1]

OPALA, J.

¶ 1 The dispositive issue tendered on certiorari is whether summary judgment was erroneously given to the defendant realtors and sellers. We answer this question in the affirmative. A buyer of real property may rely upon the positive representations of realtors and sellers about the size of the property to be conveyed. When a realtor or seller of real property makes material representations to a purchaser about the property's size, a determination of whether those representations were fraudulently or substantially misrepresented and whether the purchaser may have thereby been harmed lie within the arena of disputed facts to be found by trial of the issues. In holding that plaintiffs could not prove fraud as a matter of law and affirming summary judgment, the Court of Civil Appeals (COCA) erred. The presence of disputed material facts in this litigation makes summary relief impermissible. We hence vacate the appellate court's opinion and reverse the trial court's disposition.

I.

## ANATOMY OF THE LITIGATION

¶ 2 On 30 September 2005 Richard and Dana Bowman (Buyers) purchased a house in Shawnee, Oklahoma from Michael and Heidi Presley (Sellers) for $145,000. Linda Presley (Realtor), a Century 21 Bob Crothers Realty (Broker) sales associate and the mother of seller Michael Presley, acted as the listing and selling agent. The house sold to Buyers was represented as containing 2890 square feet. Buyers give a straightforward reason for buying the house: they wanted a larger home, and Sellers appeared to offer a residence more sizeable than that Buyers then occupied.[2] Buyers contend the represented square footage of the house not only spurred their desire to buy the home, but also served as the criterion for calculating the $145,000 purchase price.[3] The

---

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. Sellers' house is a two-story dwelling. At the time of purchase, Buyers lived in a one-story home containing 1398 square feet. At the time of contracting, Realtor was simultaneously engaged in representing Buyers in the sale of their own home. Buyers allege they obtained an appraisal of their one-story home at Realtor's be-

hest as a prerequisite to listing their house for sale.

3. Though the contract itself is silent on the method of calculation, Buyers offer evidentiary material suggesting they arrived at the purchase price by multiplying an agreed-upon price per square foot ($50) by the house's represented square footage (2890 square feet), by which method Buyers and Sellers reached the $145,000 purchase price. The COCA opinion observes that this is a "rounded" amount: the actual figure computes to

house's true size, and whether that size may have been misrepresented to Buyers by Realtor and Sellers, lies at the very center of this litigation.

¶3 Buyers' satisfaction with their newly acquired house ended abruptly when shortly after closing on the home Buyers received a copy of a mortgage appraisal prepared by Grace and Sons Appraisal Service (Grace). The appraisal gave the actual size of the house not as 2890, but rather as 2187 square feet: a difference of 703 square feet below the size represented to Buyers. Following this discovery, Buyers obtained from Grace a copy of another appraisal made by them when seller Michael Presley first purchased the house in 2000. This appraisal also gave the home's size as 2187 square feet.[4] Buyers brought suit against Broker, Realtor, and Sellers for damages based on allegations of fraud, breach of implied contract and, as

against Broker and Realtor, for violation of the Oklahoma Real Estate License Code.[5]

¶4 Broker and Realtor moved for summary judgment and Sellers likewise sought that disposition shortly afterwards. Movants argued that Buyers' reliance on the representation of size was misplaced, urging instead that prior to purchase Buyers bore a duty independently to determine the property's correct size.[6] Movants also claimed that Buyers waived their right to sue by signing the purchase contract[7] and closing agreement,[8] the provisions of which are represented as precluding suit against movants. Finally, movants asserted that Buyers suffered no actual damages, regardless of whether the size was in fact misrepresented, because Buyers' mortgage appraisal ultimately valued the home at an amount greater than its purchase price despite the diminished size.[9]

---

$144,500. The house had originally been listed for sale at $149,500.

4. Afterwards, Sellers produced yet another Grace appraisal. This appraisal also dated from 2000 but instead gave the size as 2468 square feet, an amount 422 square feet shy of the total represented to Buyers. The morass of dueling appraisals is compounded by the fact that the Pottawatomie County Assessor's office gave the house's square footage as 2890 at all times the house was listed for sale. Realtor and Sellers vigorously maintain this is the figure upon which they exclusively relied in representing the property's size.

5. 59 O.S.2001 §§ 858–101 et seq.

6. Movants note that the property's Multiple Listing Service (MLS) description—one of the materials representing the house as having 2890 square feet—contains a disclaimer, albeit in fine print, stating that "This information is deemed reliable, but not guaranteed." Buyers point to the absence of any such warning in the property's advertisement in the local Shawnee News-Star's "Home Finder" section, which also represents the size as 2890 square feet.

7. The relevant terms of the purchase contract are as follows:

3. CONDITION OF PROPERTY:
* * *
(h) * * * Buyer is purchasing the Property based on Buyer's own inspection, unless waived, and NO WARRANTIES are expressed or implied by [Broker and licensees] that shall be deemed to

survive the Closing in reference to the condition of the Property * * *.
* * *
15. DISCLAIMER AND INDEMNIFICATION: It is expressly understood by Seller and Buyer that [Broker and licensees]do not warrant the present or future value, *size by square footage*, condition, structure, or structure systems of the Property or any building, nor do they hold themselves out to be experts in quality, design and construction. Seller and Buyer shall hold [Broker and licensees] harmless in the event of losses, claims or demands by or against Seller or Buyer.* * *
(emphasis added).

8. The relevant terms of the closing agreement are as follows:
1. Inspection. Buyer has either inspected the Property in accordance with the Contract or by acceptance of the Deed to the Property. Buyer waives Buyer's right to inspect. In either event, the Property is accepted in its present condition.
* * *
3. Waiver and Release. Buyer hereby waives all claims to repair, replace, or remedy any defects in the Property and does hereby forever release and discharge the Seller, Century 21 Bob Crothers Realty (the "Listing Broker"), and Century 21 Bob Crothers Realty (the "Selling Broker"), their respective affiliated licensees, employees, representatives from all claims, demands, charges, losses, and liability whatsoever arising out of the contract and from the purchase of the Property.* * *

9. Buyers' mortgage appraisal prepared by Grace appraised the house's size as 2187 square feet (703 square feet less than that represented at

Movants argued that the alleged absence of damages should defeat Buyers' legal claim.

¶ 5 The trial court gave summary judgment to all defendants. The Court of Civil Appeals, Division I, affirmed. We granted certiorari to clarify the relative duties of buyers and sellers of real estate and their agents when positive representations are made about the size of property to be conveyed.

## II.

## STANDARD OF REVIEW

¶ 6 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [10]—is a search for undisputed material facts which, without resort to forensic combat, may be utilized in the judicial decision-making process.[11] A court may grant summary judgment only when neither genuine issues of material fact nor any conflicting inferences that may be drawn from uncontested facts are in dispute and the law favors the moving party's claim or liability-defeating defense as a result of which the moving party becomes entitled to judgment as a matter of law.[12] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or of the defense afford legitimate support for a trial court's use of summary process for a claim's adjudication.[13]

¶ 7 The purpose of summary process is not to deprive parties of their right to have the disputed facts of the case tried by a jury, but rather to decide the legal sufficiency of the evidentiary materials presented to determine whether a triable case is tendered.[14] The use of summary process may not be extended to swallow triable issues of fact. Inclusion of the latter within that process would violate the state's fundamental right to **both** a **trial by jury** at common law and **due process** by orderly trial before a court in equity.[15] The scalpel of summary judgment may be wielded to terminate litigation only when, as a matter of law, no material facts offered by the parties are in discord.

¶ 8 Issues in summary process stand before us for *de novo* review.[16] All facts and inferences in a summary proceeding must be viewed in the light most favor-

sale) but its value as $146,697 ($1697 greater than the purchase price).

10. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Mem'l Hosp.*, 1995 OK 112, ¶ 15 n. 35, 909 P.2d 765, 773 n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

11. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered in support of summary disposition reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n*, 1998 OK 113, ¶ 8, 980 P.2d 109, 113; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 8 n. 15, 777 P.2d 932, 936 n. 15.

12. In determining the appropriateness of summary relief, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, and answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n, supra* note 11, at ¶ 8, at 113. *See also Seitsinger v. Dockum*

*Pontiac, Inc., supra* note 10, at ¶¶ 16–17, at 1080–81.

13. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

14. *See State ex rel. Fent v. State ex rel. Okla. Water Res. Bd.*, 2003 OK 29, ¶ 14 n. 31, 66 P.3d 432, 440 n. 31; *Bowers v. Wimberly*, 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730. "No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined." *In re Peterson*, 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920).

15. Art. 2 § 19 and Art. 2 § 7, Okla. Const. *See* Arthur R. Miller, The Ascent of Summary Judgment and Its Consequences for State Courts and State Law (paper delivered at Pound Civil Justice Institute 2008 Forum for State Appellate Court Judges)(cautioning against the erosion of a party's fundamental jury trial and due process rights through the overuse of summary process in the pursuit of "efficiency").

16. An order granting summary relief, in whole or in part, disposes solely of questions of law, reviewable by a de novo standard. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. "Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85,

able to the non-movant.[17] Just as trial courts must decide whether summary judgment is proper in the first instance, so too must appellate courts undertake an independent and non-deferential *de novo* review when testing the legal sufficiency of all evidentiary materials proffered by the parties in their quest for or in the defense against summary relief.[18] If no material fact or inference derived from the materials stands in dispute, the movant is entitled to summary judgment if the law favors the moving party's claim or liability-defeating defense.

## III.

### THE COURT OF CIVIL APPEALS' OPINION AND THE PARTIES' ARGUMENTS ON CERTIORARI

¶ 9 The Court of Civil Appeals (COCA) affirmed the decision of the trial court. COCA concluded that Buyers had offered no evidentiary materials showing they had suffered any detriment from the misrepresentation, if any there was, because the value of their home was later appraised at an amount greater than its purchase price. Finding this fact dispositive of the lawsuit, COCA held as a matter of law that the supposed inability of Buyers to prove damages raised an insurmountable barrier to maintaining a claim for fraud[19] because damages constitute an indispensable element of that claim.

¶ 10 On certiorari, Buyers urge that (a) COCA erred in finding that Buyers suffered no detriment as a result of the misrepresentation and (b) the statutory directive of the Oklahoma Real Estate License Code[20] requires a real estate licensee not to make substantial misrepresentations about a property's size. Buyers claim that, to the extent

they did not receive the very square footage for which they bargained, they have suffered injury because of appellees' misrepresentations and are hence entitled to damages.

¶ 11 Broker, Realtor, and Sellers, for their part, contend that COCA correctly affirmed summary judgment because (a) Buyers are unable to satisfy the elements required to prove fraud as a matter of law, (b) the language of the purchase contract serves as a waiver barring Buyers' recovery, and (c) the doctrine of *caveat emptor*[21] applies, imposing on Buyers the burden of ascertaining the true size of the property before purchasing it.

## IV.

### THE EXISTENCE OF DISPUTED MATERIAL FACTS MAKES SUMMARY RELIEF IMPERMISSIBLE

#### A.

### THE QUESTION OF DAMAGES REMAINS IN DISPUTE AND MUST BE RESOLVED BY THE TRIER OF FACT

¶ 12 In an action for fraud damages are rooted in the natural and probable consequences of the acts charged, not by the stand-alone fact that fraud was perpetrated.[22] To avoid summary judgment Buyers must advance proof from which a trier of fact could reasonably infer not only a deception, but detriment suffered because of the deception's occurrence. **Buyers have satisfied that requirement here.**

¶ 13 The common law, which remains in force unless a legislative enactment

¶ 14, 859 P.2d 1081, 1084 (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).

17. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

18. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

19. The COCA opinion did not reach the issue of alleged violations of the Oklahoma Real Estate

License Code, 59 O.S.2001 §§ 858–101 *et seq.*, *supra* note 5.

20. 59 O.S.2001 §§ 858–101 *et seq.*, *supra* note 5.

21. The doctrine of *caveat emptor*, from the Latin "let the buyer beware," holds with deceptive simplicity that "purchasers buy at their own risk." Black's Law Dictionary at 236 (8th ed.2004).

22. *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, ¶ 31, 708 P.2d 1068, 1076; *McGuigan v.*

expressly states otherwise,[23] provides the elements of actionable fraud: [24] 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment.[25] Fraud is never presumed and each of its elements must be proved by clear and convincing evidence.[26] Though correctly recognizing a genuine issue of fact concerning whether Buyers were deceived by appellees' misrepresentations, COCA erred in affirming summary judgment based upon a perceived lack of damages. **Buyers have presented evidentiary materials sufficient to tender a disputed issue of fact with respect to damages.**

¶ 14 The material controversy hinges upon the true nature of the bargain struck by Buyers in purchasing Sellers' home. In support of their claim for damages, Buyers correctly advance the **"benefit of the bargain"** doctrine. This rule of recovery, adopted in Oklahoma as a measure of damages in fraud cases, allows a plaintiff to recover the difference between the actual value received and the value the defrauded party would have received had the value actually been as represented.[27] **In today's case, Buyers, while affirming their contract despite the misrepresentation, seek to recover the benefit of the bargain to which they believe they are entitled.**

¶ 15 Buyers desire to obtain that value for which they in fact were bargaining when they purchased Sellers' home. **No single, clear, and undisputed answer to this question can be drawn from the parties' evidentiary substitutes found in the record.**

**Resolution of this uncertainty is a task that must fall upon the trier of fact. In short, based upon the record no one can properly conclude that damages remain unprovable as a matter of law.**

¶ 16 Buyers claim they bargained for a house containing 2890 square feet, to be obtained for a price ($145,000) calculated at an agreed-upon amount ($50) per square foot. In receiving instead a house appraised as having only 2187 square feet, Buyers argue they have been damaged to the extent the square footage received by them falls short of the square footage represented to them—a gap of 703 square feet, almost 25% less than advertised. Looking to the asserted measure of the house's purchase price—$50 per square foot—Buyers compute the amount of their injury at $35,150—the value of the missing 703 square feet which were represented by Broker, Realtor, and Sellers, were paid for by Buyers at $50 per square foot, but not thereafter received.

¶ 17 Appellees dispute Buyers' characterization of a bargain driven by square footage. Rather, appellees claim Buyers simply bargained for a home valued at and purchased for $145,000, not a home with 2890 square feet valued at $50 per square foot. Appellees argue that a house's size is but one of numerous factors taken into consideration when deciding whether to purchase a home. Appellees urge that Buyers' specific emphasis on square footage cannot be sufficiently demonstrated to support a finding of damages. More importantly, appellees attach overriding significance to the fact that, despite the diminished size appraisal of 2187 square feet, the later appraised value of the home ($146,697) nevertheless exceeded the purchase price. For this reason appellees assert

*Harris*, 1968 OK 58, ¶ 11, 440 P.2d 680, 682; *Sharp v. Keaton*, 1926 OK 335, ¶ 0, 245 P. 852 (First Syllabus by the Court).

**23.** 12 O.S.2001 § 2.

**24.** Though the language of 12 O.S.2001 § 2009(B) provides the statutory directive for pleading allegations of fraud in Oklahoma courts, the elements necessary to prove fraud derive from the traditional common-law requirements. *Gay v. Akin*, 1988 OK 150, ¶ 7, 766 P.2d 985, 989.

**25.** *Rogers v. Meiser*, 2003 OK 6, ¶ 17, 68 P.3d 967, 977; *Dawson v. Tindell*, 1987 OK 10, ¶ 5, 733 P.2d 407, 408.

**26.** *Rogers v. Meiser, supra* note 25, at ¶ 17, at 977; *Brown v. Founders Bank and Trust Co.*, 1994 OK 130, ¶ 12 n. 17, 890 P.2d 855, 862 n. 17; *Tice v. Tice*, 1983 OK 108, ¶ 8, 672 P.2d 1168, 1171. "Actual fraud is always a question of fact." 15 O.S.2001 § 60.

**27.** *LeFlore v. Reflections of Tulsa, Inc., supra* note 22, at ¶ 36, at 1077 (citations omitted).

that far from suffering injury, Buyers have in fact received more than was represented to them.

■ ¶ 18 The question of damages cannot be resolved based upon the estimations of value contained in the mortgage appraisal alone. An appraisal can give only an **approximate** value that is **perceived** by its author. Appraisals merely offer scenarios suggesting what a thing might be worth, not infallible indicia of fixed categorical worth. The precise value of the thing in litigation must be determined by the trier of fact. The jury is the sole and final arbiter. Because any appraisal that antedates the jury's verdict is but an item of evidence, the increased home value indicated by the mortgage appraisal, though probative of damages, is not dispositive of the issues. Neither are the appraisals of square footage in themselves conclusive evidence of damage. Buyers need not explicitly controvert the mortgage appraisal's value estimate to raise a conflicting inference as to damages. **Inconsistent appraisals of square footage define this litigation.** The fact that two conflicting appraisals emanate from the same source— Grace, a professional appraiser—only clouds the issues to be considered.

¶ 19 The existence of significantly disparate appraisals of **size** raises a reasonable inference that appraisals of **value** might be similarly inconsistent, especially since no real certainty exists about the house's actual size, which will be linked inextricably to its value. **Summary judgment is proper only when undisputed material facts support but a single inference that favors a movant's quest for relief.**[28] **Amid a barrage of warring appraisals of size, appellees may not rely on a single assessment of value taken from a source that has only contributed to** the uncertainty to prove Buyers have suffered no detriment.

¶ 20 The fact that Buyers purchased a house advertised as double the size of their former home raises a sufficient countervailing inference suggesting Buyers were at least in some part motivated to purchase Sellers' home because of its greater size. The extent to which this motivation possibly drove towards or even defined the bargain struck by Buyers and Sellers cannot be discerned from the record alone. The question must be resolved by the trier of fact.

¶ 21 In our review of summary process this court must assess all facts and inferences raised by a motion for summary judgment in the light most favorable to the non-moving party.[29] The record offers no evidentiary materials compelling enough to leave but a single inference in Sellers' favor.[30] It is not for this court to opine on the relative merits of the parties' arguments on damages or to speculate on their eventual fate upon trial. We hold simply that because neither party has presented evidentiary materials sufficient to place the damages question beyond dispute, summary relief is inappropriate here.

### B.

### OKLAHOMA REAL ESTATE LICENSEES HAVE A DUTY NOT TO MAKE SUBSTANTIAL MISREPRESENTATIONS IN THE CONDUCT OF BUSINESS AND MAY BE HELD LIABLE FOR SUCH MISREPRESENTATIONS

¶ 22 In addition to their claim of fraud, Buyers also allege that Broker and Realtor violated provisions of the Oklahoma Real Estate License Code (the Code)[31] by misrepresenting the size of Sellers' home. The li-

28. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n, supra* note 11, at ¶ 8, at 113; *Hulsey v. Mid-America Preferred Ins. Co., supra* note 11, at ¶ 8 n. 15, at 936 n. 15.

29. *Carmichael v. Beller, supra* note 17, at ¶ 2, at 1053.

30. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n, supra* note 11, at ¶ 8, at 113; *Hulsey v. Mid-America Preferred Ins. Co., supra* note 11, at ¶ 8 n. 15, at 936 n. 15. Buyers have offered evidentiary material raising a legitimate inference that the quantum of damages could be estimated by assigning a value of $50 to each of the 703 square feet for which they bargained but did not receive.

31. 59 O.S.2001 §§ 858–101 *et seq., supra* note 5. The Code governs the licensure of, and creates standards of professional conduct for, Oklahoma real estate licensees.

cense of an Oklahoma real estate licensee may be suspended or revoked for:

> Making substantial misrepresentations or false promises in the conduct of business, or through real estate licensees, or advertising, which are intended to influence, persuade, or induce others;* * *

59 O.S.2001 § 858–312(2) or for:

> Any other conduct which constitutes untrustworthy, improper, fraudulent, or dishonest dealings.

59 O.S.2001 § 858–312(8).

Real estate licensees also have an affirmative duty "[t]o treat all parties with honesty and exercise reasonable skill and care." 59 O.S. Supp.2005 § 858–354(B)(1).

¶ 23 Broker and Realtor, for their part, urge that any misrepresentation of size was neither substantial nor intentionally deceptive, claiming reliance upon the figure provided by the Pottawatomie County Assessor's office and pointing also to the disclaimer in the Multiple Listing Service (MLS) description and the waivers in the purchase contract and closing agreement. Moreover, Broker and Realtor argue for the continued relevance and applicability of the doctrine of *caveat emptor*, maintaining that the ultimate duty of determining the correct square footage properly devolves upon Buyers.

 ¶ 24 For reasons explained in Part IV–C of this opinion, sellers of real property and their agents may not resort to the doctrine of *caveat emptor* to avoid liability for fraudulent misrepresentations made to purchasers about the size of property to be conveyed. We also dispense with appellees' contention that Buyers waived their right to pursue a claim through the terms of the purchase contract and closing agreement. Buyers allege fraud in the making of the

contract. A whisper of fraud can topple the pillars of even the most impregnable contract, for to base a contract upon fraud is to build it upon sand. This court has repeatedly stated that:

> The purpose and effect of the evidence introduced in the case at bar is not to contradict or vary the terms of the written contract, but to show that the plaintiff was imposed upon, and the fraud was practiced in obtaining his signature thereto. Fraud vitiates everything it touches, and a contract obtained thereby is voidable. And evidence is always admissible to show that contracts have been fraudulently obtained.[32]

We honor this rule because "the public policy fostering the certainty and stability of contracts gives way to the public policy against fraud."[33]

¶ 25 To define the parameters of a real estate licensee's duties when making material representations to purchasers, we turn to the relevant language of the Code pertaining to a licensee's obligation to deal honestly with all parties to a real estate transaction. The terms of 59 O.S. Supp.2005 § 858–354(B)(1) expressly command that a licensee "shall* * *treat all parties with honesty and exercise reasonable skill and care," and the provisions of 59 O.S.2001 § 858–312 implicitly achieve the same purpose by authorizing professional disciplinary action for the making of, among other things, "substantial misrepresentations or false promises."[34]

¶ 26 This essential obligation of truthfulness operates independently of, though not always separately from, a heightened professional duty to confirm the accuracy of representations made about things offered for sale. Significantly, Buyers have not brought actions against Broker and Realtor for professional negligence, but rather for fraud and

---

**32.** *First Nat'l Bank v. Honey Creek Entm't Corp.*, 2002 OK 11, ¶ 12, 54 P.3d 100, 104; *Bredouw v. Jones*, 1966 OK 93, ¶ 27, 431 P.2d 413, 419; *American Asbestos Prods. Co. v. Smith Bros.*, 1937 OK 604, ¶ 10, 73 P.2d 839, 841; *McLean v. Southwestern Cas. Ins. Co.*, 1915 OK 987, ¶ 2, 159 P. 660, 661.

**33.** *First Nat'l Bank v. Honey Creek Entm't Corp.*, *supra* note 32, at ¶ 12, at 104.

**34.** The terms of § 858–312(2) enjoin licensees from making substantial misrepresentations

while the terms of § 858–312(8) prohibit "any *other* conduct which constitutes untrustworthy, improper, fraudulent, or dishonest dealings" (emphasis added). A careful grammatical reading of these two subparts of the statute in tandem suggests that the making of "substantial misrepresentations or false promises" is contemplated within the broader category of "untrustworthy, improper, *fraudulent*, or dishonest dealings" (emphasis added).

violations of a Code whose provisions are defined by a responsibility to avoid fraudulent conduct. This court has previously declined, under facts distinguishable but not dissimilar from those in the present case, to impose upon real estate licensees "an independent, higher standard of care to investigate property offered for sale" in suits brought against brokers and realtors claiming professional negligence.[35]

¶ 27 Because Buyers' arguments are anchored in an action for fraud, we do not today reach the question of whether a real estate licensee bears a heightened duty independently to ascertain the size of a property represented to potential purchasers, the breach of which would support a cause of action for professional negligence. In this case the relevant duty of a real estate licensee is to treat all parties with honesty. A licensee may incur liability for failure to uphold that duty when lay persons such as Buyers rely upon their representations made as licensed professionals. The question of whether Broker and Realtor represented the property size reasonably, recklessly, or with intentional dishonesty must be resolved by the trier of fact.

## C.

### A BUYER OF REAL PROPERTY MAY RELY UPON THE POSITIVE REPRESENTATIONS OF SELLERS AND THEIR AGENTS ABOUT THE SIZE OF PROPERTY TO BE CONVEYED, EVEN THOUGH THE BUYER'S INVESTIGATION COULD HAVE REVEALED THE NONEXISTENCE OF THE MATERIAL FACT REPRESENTED

¶ 28 The common-law doctrine of *caveat emptor* does not reach situations where a purchaser of real property has relied upon a positive representation of material fact. A representation of size, such as a firm figure of square footage, constitutes a statement of material fact the assertion of which serves as a positive assurance upon which a purchaser may rely without being compelled independently to determine the truth or falsity of the fact represented.[36] The very fact of the material representation is itself enough to justify a buyer's reasonable reliance upon its accuracy. Appellees argue that Buyers had a duty to investigate, measure, or otherwise confirm the home's square footage prior to purchase. Appellees insist that, because the home was open to Buyers' inspection, Buyers could not unblinkingly accept the representations of appellees as true without verification and then claim afterwards to have been deceived. Though the doctrine of *caveat emptor* remains viable in Oklahoma in certain instances, its application to this case is inapposite. Appellees' reliance on the defense is misplaced.

¶ 29 This court's jurisprudence allows the doctrine of *caveat emptor* to bar recovery for fraudulent misrepresentation only in cases where the reasonably diligent purchaser of property would have uncovered some obvious defect or discerned the falseness of some misleading **opinion** offered as to the property's value. We have thus limited the doctrine's application to cases involving a plaintiff's unjustified reliance on: 1) misrepresentations of patent defects [37] whose existence reasonably could have been discovered when the plaintiff inspected the property [38] and 2) representations of value typically offered in the form of a seller's self-serving

---

**35.** *Rice v. Patterson Realtors,* 1993 OK 103, ¶ 5, 857 P.2d 71, 73; *Dawson v. Tindell, supra* note 25, at ¶ 1, at 408.

**36.** This court has held that:
A vendee of real estate has a right to act on the positive representation of the vendor as to the existence of a material fact, although vendee by investigation could have ascertained the nonexistence of such fact. The question in such case is whether the vendee was in fact deceived by the representation.

*G.A. Nichols, Inc. v. Karnes,* 1940 OK 380, ¶ 0, 106 P.2d 125, 126 (First Syllabus by the Court).

**37.** A patent defect is a "readily observable" defect. *Rogers v. Meiser, supra* note 25, at ¶ 15, at 977.

**38.** *See, e.g., Dawson v. Tindell, supra* note 25, at ¶ 5, at 408–09; *Gutelius v. Sisemore,* 1961 OK 243, ¶ 7, 365 P.2d 732, 734–35.

and frequently speculative opinion.[39]

¶ 30 The representation of a building's dimensional size, capable of precise expression in square feet, involves neither a readily discoverable defect or flaw nor "the mere expression of an opinion."[40] It is a statement of material **fact**. A buyer of property may rely on its accuracy because the making of the clear and unequivocal assurance itself discourages buyers from conducting additional investigation.[41] To declare otherwise would permit a seller to fabricate plausible material "facts" and then avoid liability for the misrepresentations by later recasting them as mere "opinions" that the buyer should never have believed.[42] In a claim of fraud, the real question is not whether a buyer was somehow unwise to rely on a representation of material fact, but whether the buyer "was in fact deceived by the representation."[43] The question falls into the realm reserved for the trier of fact.

## V.

### SUMMARY

¶ 31 Buyers of real property may rely on positive representations made by realtors and sellers about the property's size. Representations of the size of real property are statements of material fact, not expressions of opinion, and a buyer need not conduct a separate investigation to ascertain their truth. If the buyer later alleges fraudulent misrepresentation against the realtor or seller, questions of whether the buyer was in fact deceived and suffered detriment because of the misrepresentation must be decided by the trier of fact. A real estate licensee is in such instances also bound by a professional duty to treat all parties with honesty.

¶ 32 A real property appraisal is not an incontestable scientific verity that may be accepted in summary process as rising to the level of an undisputed fact proffered by evidentiary materials. Raised against the plaintiffs' quest for trial is nothing more than a set of legal arguments. These are dressed up to look as though they were resolving fact issues. But the latter will not vanish when driven solely by legal rhetoric. They must be settled by trial. The contentions of Sellers do not by themselves give support to summary judgment, and the issues raised by Buyers cannot be resolved by summary process. The existence of disputed material facts that call for resolution of issues makes summary relief impermissible. The use of

39. *See, e.g., Sokolosky v. Tulsa Orthopaedic Assoc., Inc.*, 1977 OK 46, ¶ 10, 566 P.2d 429, 431; *Onstott v. Osborne*, 1966 OK 3, ¶ 16, 417 P.2d 291, 294; *McDaniel v. Quinn*, 1957 OK 23, ¶ 14, 307 P.2d 127, 130. "It is a general rule that representations as to value are considered mere matters of opinion, and even when untrue are not to be considered as fraudulent." *Nowka v. West*, 1919 OK 367, ¶ 8, 186 P. 220, 223.

40. *G.A. Nichols, Inc. v. Karnes, supra* note 36, at ¶ 4, at 127.

41. Nearly a century ago, this court had already refused to apply the doctrine of *caveat emptor* to a case involving a misrepresentation of the size of real property. We stated that:
False representations of a vendor as to the quantity of a tract of land he offers for sale are not mere matters of opinion, but are material, and he cannot avoid their consequences merely because the vendee might have ascertained their falsity by a survey of the land or by reference to official plats and records.
*Miller v. Wissert*, 1913 OK 475, ¶ 1, 134 P. 62, 64. This court's subsequent opinions have not deviated from this general rule, and we decline to do so today. Black's Law Dictionary, *supra* note 21, at 236, has also noted the greatly diminished

contemporary relevance of the doctrine of *caveat emptor*, stating that "[m]odern statutes and cases have greatly limited the importance of this doctrine."

42. This court has observed that:
[N]o man should be permitted to complain or take advantage of the fact that another has too confidently relied on the truthfulness of the statements he has himself made * * *.
*Thompson v. Davis*, 1925 OK 96, ¶ 20, 254 P. 501, 503 (citations omitted). We have similarly held that:
It is as much an actionable fraud willfully to deceive a credulous person with an improbable falsehood as it is to deceive a cautious and sagacious person with a plausible one. The law draws no line between the two falsehoods. It only asks in either case, Was the lie spoken with intent to deceive and defraud, and was the false statement believed, and money paid on this faith that it was true? These questions are for the jury.
*Prescott v. Brown*, 1911 OK 513, ¶ 14, 120 P. 991, 993 (citation omitted).

43. *G.A. Nichols, Inc. v. Karnes, supra* note 36, at ¶ 0, at 126 (First Syllabus by the Court).

summary process may not be extended to swallow triable issues of fact. Inclusion of the latter within that process would violate the state's fundamental right to **both a trial by jury** at common law and **due process** by orderly trial before a court in equity.[44]

¶ 33 On certiorari granted upon plaintiff's (Buyers') petition, the Court of Civil Appeals' opinion is vacated; the trial court's summary disposition is reversed; and the cause is remanded for further proceedings to be consistent with today's pronouncement.

¶ 34 EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, WATT, WINCHESTER, COLBERT and REIF, JJ., concur.

¶ 35 KAUGER, J., not participating.

44. Art. 2 § 19 and Art. 2 § 7, Okla. Const., *supra* note 15.