FILED
United States Court of Appeals
Tenth Circuit

September 6, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TKO ENERGY SERVICES, LLC, an
Oklahoma limited liability company,

Plaintiff - Appellant,

v.

M-I L.L.C., a Delaware limited
liability company, d/b/a M-I Swaco,
d/b/a Federal Wholesale Drilling Mud,

Defendant - Appellee.

No. 13-5028
(D.C. No. 4:12-CV-00108-GKF-PJC)
N. D. Oklahoma

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Plaintiff and Appellant (TKO Energy Servs., L.L.C.) appeals the grant of the Defendant's (M-I L.L.C.) motion to dismiss its antitrust complaint under Fed. R. Civ. P. 12(b)(6) for failing to satisfy the pleading requirements of Fed. R. Civ. P. 8(a) and 9(b).  For the following reasons, we affirm.

## BACKGROUND

Plaintiff TKO, a small, family-owned Oklahoma company, is a retail supplier of drilling fluids and related engineering services which are used in the oil and gas industry to aid in drilling wells.  Defendant M-I conducts business in both the wholesale and retail drilling fluids markets.  M-I has two separate divisions—Federal Wholesale Drilling Mud ("Federal"), which operates in the wholesale market, and M-I SWACO ("SWACO"), which operates in the retail market, marketing drilling fluids to end-users.  Thus, M-I is both a supplier of materials to TKO through its Federal division, as well as a competitor of TKO in the retail market, through SWACO.  As averred in TKO's First Amended Complaint ("FAC"), "M-I Swaco represents that it is the leading supplier of drilling and completions fluids.  It is a wholly owned subsidiary of Schlumberger Limited, the largest oilfield services company in the world."  FAC ¶ 7, Appellant's App. at 31.

The following undisputed facts are derived largely from the district court's order which, in turn, relied on the FAC, taking the allegations in the complaint as true:

Drilling fluids are used in oil and gas wells to facilitate the drilling process. They are created by adding bentonite, barite, caustic soda, and sodium carbonite to water, oil or synthetics. Two companies (M-I and Baroid Industrial Drilling Products) largely control the mining and production of bentonite and barite, thereby dominating the drilling fluids market at the wholesale and retail levels.[1]

M-I's former parent company, M-I Drilling Fluids, was previously subject to antitrust restrictions due to possible anticompetitive effects of a merger between Dresser Industries, Inc. (the 64% owner of M-I Drilling Fluids) and Baroid Corporation.[2] The United States filed a civil complaint in 1993 to block the proposed merger, and the Final Judgment required Dresser to sell off its interest in M-I Drilling Fluids before the merger could occur. Accordingly, Smith International, Inc. acquired Dresser's interest in M-I Drilling Fluids, subject to a

---

[1]We take this representation as to the "dominance" of M-I and Baroid in the bentonite and barite mining and production fields as true, as required when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6). M-I avers that other companies also mine and produce bentonite and barite. See Appellee's Br. at 5 n.3.

[2]The parties do not specify whether there is any material difference between "Baroid Corporation" and "Baroid Industrial Drilling Products."

condition that Smith could not sell or merge M-I Drilling Fluids with certain other companies, including Schlumberger.

In 1999, the defendant M-I was created as a joint venture between Smith (as a 60% owner) and Schlumberger (as a 40% owner). The Department of Justice brought criminal contempt charges against Smith and Schlumberger for violating the order not to sell or merge M-I Drilling Fluids to or with Schlumberger. Smith and Schlumberger were found in criminal contempt for violating the Final Judgment, which subjected them to $15 million in disgorgement of profits and fines. The Final Judgment remained in effect until 2006. After it lapsed, Schlumberger purchased Smith in August 2010, so that 100% of the defendant M-I is now owned by Schlumberger. TKO claims that the alleged anti-competitive activity at issue in this case began in the fall of 2010.

Meanwhile, TKO was established in January 2010. In February 2010, TKO contacted M-I's wholesale division, Federal, to obtain pricing and terms for the wholesale purchase of drilling fluids. TKO filled out a credit application and Federal informed TKO that it could receive wholesale drilling fluid under "net 30" terms. "Net 30" terms provided that materials would be delivered up front, followed by payment from TKO within 30 days of receipt of Federal's invoice. As TKO's business increased, its orders increased.

As the district court stated, "[a]t some point, Federal issued materially incorrect invoices to TKO. Federal did not deliver all ordered materials. And

Federal failed to properly credit TKO for returned delivery pallets and returned unused product. TKO paid the incorrect invoices less the amounts they thought were erroneously charged or not credited—a practice referred to as 'short pay.'" Opinion & Order at 3-4 (citing FAC ¶ 23). Citing the FAC, the district court further described the situation as follows:

> Further invoicing and order problems occurred. Federal's inability to reliably meet TKO's orders threatened TKO's business model. TKO alleges Federal provided higher quality products to its own retail division—M-I Swaco—while providing damaged goods to TKO. In April 2011, Federal increased its prices. Communication breakdowns led to situations in which one Federal employee assured TKO that a "short pay" would suffice while another employee would state that short payments might threaten TKO's credit standing with Federal. Eventually, Federal began to threaten a credit hold if TKO did not pay the amounts Federal claimed it was owed. A credit hold would have been disastrous for TKO.

> The business relationship continued to spiral downward. Federal delivered order forms on several occasions to one of TKO's customers that revealed what TKO was paying for the wholesale drilling fluid it then resold to the customer. In January 2012, Federal again increased its prices. On January 23, 2012, Federal sent TKO an email indicating TKO owed over $125,000, and stated that if the funds were not provided overnight Federal would place TKO on a credit hold. Federal also informed TKO that it had never been "formally approved" for credit and would need to finish a credit application that day to avoid a credit hold. TKO completed the credit application and paid two invoices it claims it had not previously received. On February 20, 2012, Federal emailed TKO, asking about an allegedly unpaid invoice from December 2011 and informing TKO that a credit conference concerning TKO was going to occur the next day.

> On February 21, 2012, Federal put TKO on a credit hold and refused to tell TKO why. That same afternoon, a different Federal employee, Linda Norvell, provided TKO with a statement showing

allegedly past due balances and stated that "I am still working on a credit limit for your account as your account was never formally approved. I need your balance cleared up immediately to move forward with this." TKO provided a response that detailed how the requested balances were false. On February 22, 2012, Ms. Norvell responded that TKO would have to pay "cash in advance" prior to orders being placed. TKO sought further information from Federal, but Federal did not respond.

Id. at 4-5. See FAC ¶ ¶ 25-43.

TKO filed its complaint in the instant matter on March 2, 2012, alleging against M-I (1) monopolization, in violation of Sherman Act § 2; (2) attempted monopolization, in violation of Sherman Act § 2; (3) manipulation and control of "essential facilities," in violation of Sherman Act § 2; (4) fraudulent misrepresentation, in violation of Oklahoma law; (5) tortious interference with business relations, in violation of Oklahoma law; and (6) violation of Oklahoma's Antitrust Laws. Before M-I filed its Answer, TKO filed its FAC, which included the allegations described above. The thrust of the FAC was that M-1 used threatened and actual limitations on its access to drilling fluids products to attempt to monopolize and further its monopoly over drilling fluids products in the Southern Mid-Continent Region. More specifically, TKO alleged that M-I drove competitors from the market by forcing retail suppliers of drilling fluids to purchase bentonite, barite, and other drilling fluids components from Federal, at excessive prices. Thus, M-I's use of supracompetitive pricing, its restriction of

access to essential products, and its imposition of credit holds on competitors deterred competitors to M-1 Swaco from supplying fluids products to end users.

On April 20, 2012, M-I filed a Motion to Dismiss the FAC for failure to state a claim under Rule 12(b)(6). TKO then filed its Response; M-I filed a Reply. Rather than ruling immediately on the Motion to Dismiss, the district court entered a scheduling order which allowed the parties to proceed with extensive pre-trial discovery, including several sets of extensive document requests, interrogatories, requests for admission. After eleven months of discovery, the district court entered its opinion and order granting M-I's motion to dismiss. The order dismissed with prejudice all of TKO's antitrust claims and all of TKO's state law claims without prejudice.

The district court found that TKO had failed to state a claim for monopolization under section 2 of the Sherman Act, concluding that TKO's complaint did not allege facts sufficient to show that M-1 possesses monopoly power in the relevant market, nor did it allege facts sufficient to show that M-1 willfully acquired or maintained a monopoly using anticompetitive means. The court accordingly found that TKO had failed to state a claim for a violation of the federal antitrust laws and dismissed the antitrust claims with prejudice. The district court further found that TKO failed to state claims under Oklahoma law for fraudulent misrepresentation, tortious interference with business relations, and antitrust violations. TKO subsequently notified the court that it was electing to

stand on the allegations contained in its FAC and requested that the court enter a final judgment from which TKO could immediately appeal. This appeal followed.

**DISCUSSION**

TKO alleges the district court erred when it: (1) dismissed TKO's antitrust claims *with prejudice* and without allowing TKO leave to amend; (2) failed to accept TKO's allegations as true, contrary to our decision in Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008); (3) failed to apply the correct standard for "plausibility" under Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); (4) concluded that TKO's complaint did not allege sufficient facts to state a claim for monopolization under § 2 of the Sherman Act; (5) concluded that TKO's complaint did not allege sufficient facts to state a claim for attempted monopolization under § 2 of the Sherman Act; (6) concluded that TKO's complaint did not allege sufficient facts to state a claim for essential facilities manipulation under § 2 of the Sherman Act; (7) concluded that TKO's complaint did not state facts sufficient to allege that M-I possesses monopoly power in the relevant markets; (8) concluded that TKO's complaint did not state facts sufficient to allege M-I willfully acquired or maintained a monopoly using anticompetitive means; (9) concluded that TKO's complaint did not state sufficient facts to allege a claim for fraudulent misrepresentations; (10) concluded that TKO's complaint failed to state a claim for tortious interference with

business relations; and (11) concluded that TKO's complaint failed to state a claim for violation of Oklahoma's antitrust law, 79 Okla. Stat. § 203. TKO also argues that, assuming the case would be remanded, this case should be reassigned to a different judge to ensure that TKO has a fair and impartial tribunal. We begin with TKO's argument that the district court misapplied the standard of review.

## I. Standard of Review

TKO claims the district court utilized an improper standard in dismissing TKO's FAC.[3] TKO avers that, rather than taking the allegations of the FAC as true, the district court improperly required TKO to prove its case in its FAC. TKO argues, in particular, that the district court failed to take its allegations as true and thereby contravened our decision in Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008).

In Robbins, we recognized the new, albeit "less than pellucid," formulation by the Supreme Court of the standard for dismissing a claim under Fed. R. Civ. P. 8(a)(2): "to withstand a motion to dismiss, a complaint must contain enough

---

[3]The district court dismissed the federal antitrust claims with prejudice, stating, "[i]f this [the previously explained problem with TKO's claims] were the only deficiency with plaintiff's antitrust claims, the court would grant leave to permit a Second Amended Complaint with more specific factual allegations; however, the issues discussed below preclude plaintiff from being able to state an antitrust claim here." Opinion & Order at 8; Appellant's App. at 134. The court dismissed the state claims without prejudice, giving TKO the opportunity to re-file its state claims. TKO rejected that offer, however, and asked the court to enter a final judgment, which it did.

allegations of fact 'to state a claim to relief that is plausible on its face.'" Bell

Atlantic v. Twombly, 550 U.S. 544, — (2007).  As we observed in Ridge at Red

Hawk, L.L.C. v. Schneider:

> the mere metaphysical possibility that *some* plaintiff could prove
> *some* set of facts in support of the pleaded claims is insufficient; the
> complaint must give the court reason to believe that *this* plaintiff has
> a reasonable likelihood of mustering factual support for *these* claims.

493 F.3d 1174, 1177 (10th Cir. 2007).  The burden is on the plaintiff to frame a

"complaint with enough factual matter (taken as true) to suggest" that he or she is

entitled to relief.  Gee v. Pacheco, 627 F.3d 1178, 1183 (10th Cir. 2010) (quoting

Twombly, 550 U.S. at 556).  We must distinguish between well-pleaded factual

allegations and unsupported conclusory allegations.  Furthermore, "[t]he nature

and specificity of the allegations required to state a plausible claim will vary

based on context."  Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215

(10th Cir. 2011).

We review de novo the district court's dismissal of the case pursuant to

Fed. R. Civ. P. 12(b)(6), bearing in mind the above standards.  See Khalik v.

United Airlines, 671 F.3d 1188, 1190 (10th Cir. 2012).  As the following analysis

indicates, the district court utilized the proper standard of review in determining

that TKO had failed to state a claim for violations of the antitrust laws and other

pertinent laws.  We note that, in this particular case, there was some degree of

discovery conducted before the district court issued its decision.

-10-

**II. Federal Antitrust Claims**

TKO alleged that M-I engaged in monopolization, attempted monopolization and exploited essential facilities, all in violation of Sherman Act § 2. 15 U.S.C. § 2. The district court found that TKO had failed to allege facts sufficient to plausibly show any of those claims.

"Section 2 of the Sherman Act prohibits actions by 'person[s] who shall monopolize, [or] attempt to monopolize . . . any part of the trade or commerce." Cohlmia v. St. John Med. Center, 693 F.3d 1269, 1280 (10th Cir. 2012) (citing 15 U.S.C. § 2). To state a claim for monopolization, TKO must plead facts that plausibly show "the possession of monopoly power in the relevant market and . . . the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Id. (quoting United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966)).

To state a claim for attempted monopolization, TKO must plead facts that plausibly show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Christy Sports, LLC v. Deer Valley Resort Co., 555 F.3d 1188, 1192 (10th Cir. 2009) (further quotations omitted). Finally, an essential facilities claim is not an independent antitrust claim, but is, rather, a description of one way a monopolist could willfully

-11-

acquire or maintain monopoly power (by manipulating essential facilities). The district court concluded that TKO's FAC failed to allege facts sufficient to show that M-I possessed monopoly power in the relevant market or that it willfully acquired or maintained such a monopoly using anticompetitive means. It thus concluded that TKO failed to state a claim under the Sherman Act. We agree with the district court's careful and thorough analysis, and only supplement to emphasize the correctness of the court's discussion.

As the district court observed, TKO states several broad antitrust legal conclusions, but it fails to allege supporting facts: the FAC alleges "M-I has acquired and is maintaining a monopoly in the Drilling Fluids Market," ¶ 58; "M-I has the power to control prices and exclude competition," ¶ 58; "[s]ubstantial barriers to entry and expansion exist in the Drilling Fluids Market," ¶ 59; "prices in the Drilling Fluids Market . . . were higher than they would have been in a competitive market; innovation has been stifled; and the number and effectiveness of competitors have been diminished," ¶ 61. But TKO does not plead who M-I's competitors are, what market share they (M-I or its competitors) control, what substantial entry barriers exist, or what competitors have been excluded. The FAC does state, and the district court accepted as true, the factual allegations that the two companies (M-I and Baroid Industrial Drilling Products) "dominated" the drilling fluids market, that they "largely control" bentonite and barite production, and that there were antitrust problems in the past. However,

"TKO does not plead that M-I has a monopoly on bentonite or barite production, only that two companies have a significant share. TKO does not plead M-I's market share in the Southern Mid-Continent Region or facts that plausibly suggest M-I's market share is sufficient to enable M-I to exercise monopoly power." Opinion & Order at 7-8.

Furthermore, TKO's complaint fails to allege facts sufficient to show that M-I willfully acquired or maintained a monopoly using anticompetitive means. While TKO's complaint certainly details a number of disputes with M-I, it largely consists of conclusory accusations that M-I's conduct had an anticompetitive motive and intent, with no supporting factual averments. For example, the FAC alleges "Federal issued materially incorrect invoices to TKO. Federal failed, in some instances, to deliver all the material that TKO would order, did not properly credit to TKO its return to Federal of the delivery pallets, and failed to properly credit TKO for returned, unused product. This conduct was intentional, and committed by defendant with the specific intent of impairing the operations of plaintiff." FAC ¶ 23. Other such conclusory paragraphs exist. The FAC provides no basis for distinguishing between a business arrangement with problems and true anticompetitive conduct on behalf of M-I.

In short, we agree with the district court that "'[w]ithout further factual enhancement [the complaint] stops short of the line between possibility and plausibility.' The facts alleged could possibly show anticompetitive targeting by

M-I to monopolize the retail drilling fluids market in the relevant region. But they cannot plausibly do so." Opinion & Order at 11. As the district court summed up:

> M-I never had to deal with TKO in the first place. . . . M-I could entirely refuse to sell to TKO without violating the Sherman Act. . . . Second, if TKO is correct that M-I has a monopoly over barite and bentonite, then drilling fluid retail customers will be paying the monopoly price [for those items] regardless of whether TKO serves as an intermediary. . . . A vertically integrated company with a monopoly over an input—barite or bentonite here—can charge a monopoly price over the final product—drilling fluids. And selling the input at monopoly price to an intermediary that then sells the final product would not lower the ultimate price. Thus, the barite or bentonite monopoly will lead to monopoly prices regardless of whether TKO succeeds or fails. While a competitor may be harmed, competition will not.

Id. at 11-12.

### III. State Law Claims of Fraudulent Misrepresentation and Tortious Interference with Business Relations

TKO also claims that M-I made fraudulent misrepresentations to it and that it tortiously interfered with its business relations. Under Oklahoma law, the elements of fraud are "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) detriment." Bowman v. Presley, 212 P.3d 1210, 1218 (Okla. 2009).

-14-

The district court held that TKO failed to allege sufficient well-pleaded facts to state a claim for fraud, primarily because the allegations fail to state that TKO actually relied on any allegedly false representation and do not identify specific false statements meant to lure TKO into detrimental reliance. We agree with the district court's analysis of this point.

Regarding the tortious interference with business relations claim, the elements under Oklahoma law are "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1165 (Okla. 2009). Once again, the court explained why TKO failed to state a claim for tortious interference, and we agree completely with its analysis.

Finally, with respect to claims under Oklahoma's antitrust laws, the court held correctly that failure to state a claim under federal antitrust law doomed TKO's claim under state antitrust law. We accordingly so find.

## CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of the complaint in this case.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge