Olen ARMSTRONG, d/b/a Armstrong Commercial Laundry & Distributing Company, Armstrong Commercial Laundry & Distributing Co., a corporation, Maytag Sales & Service, a corporation, and Armstrong Commercial Laundry Distributing Co., a corporation, Plaintiffs in Error,

v.

W. C. GILL, Defendant in Error.

No. 40395.

Supreme Court of Oklahoma.

April 14, 1964.

Rehearing Denied May 19, 1964.

Application for Leave to File Second Petition for Rehearing Denied June 9, 1964.

Stubbs & Maynard, Oklahoma City, for plaintiffs in error.

Love & Camp, Oklahoma City, for defendant in error.

JOHNSON, Justice.

This action was filed by W. C. Gill, defendant in error, hereafter referred to as plaintiff, in the District Court of Oklahoma County, Oklahoma, seeking an accounting, dissolution and distribution of partnership

assets against the plaintiffs in error, hereafter referred to as defendants.

The amended petition alleged that the plaintiff entered into a written agreement with the defendant Armstrong on October 21, 1958, whereby the partnership was created by which contract the parties were to conduct the business of selling and distributing commercial laundry equipment in the State of Nebraska; that under such agreement the defendant was to contribute his dealer's franchise, and the plaintiff was to contribute his time, effort and salesmanship, for which he was to receive a 7% commission on all sales made by him and 50% of the net profits after deduction of expenses. That the agreement continued in effect from its date, October 21, 1958, to about September 1, 1959. That large sums have been collected by the defendants, and in spite of plaintiff's demands no accounting has been made. The petition prayed for a dissolution of the partnership, for an accounting, and that the property of the partnership be sold and the proceeds divided. It further prayed for injunction forbidding the collection of further accounts and for appointment of a receiver.

In a verified answer thereto the defendant filed a general denial and specifically denied the existence of a partnership, but admitted that there was an employment contract, and that there was owing plaintiff $3,348.78 and tendered same to him.

The plaintiff replied to the defendant's answer by general denial.

Thereafter, by order of the court defendants filed an accounting to which account so filed the plaintiff filed his objections. Upon the issues thus joined, a trial was had resulting in a judgment for plaintiff in the amount of $9,275.28.

After the overruling of the motion for a new trial, this appeal followed.

The defendants assert error under four propositions as follows:

"Proposition I: Error of the Court in entering Interlocutory Decree for an accounting without first determining the Plaintiff's right to an accounting and determining what type of accounting should be rendered if any.

"Proposition II: There is no competent evidence to support the Court's Findings of Fact numbered II, III, IV, V, VI, VII and judgment.

"Proposition III: There is no evidence or competent evidence to support the Court's Finding of Fact numbered VIII.

"Proposition IV: Irregularity in the proceedings of the Trial Court."

■ We shall consider these in the order presented. There is no dispute about the written contract nor the dates during which it was in effect, which was from October 21, 1958 to August 31, 1959. The disagreement between the parties arises from the two different methods of accounting as disclosed by the pleadings. The difference necessarily involved an accounting before the court. Not only is there a presumption that the court acted properly and did all that was necessary to sustain the proceedings, but the minute of the court clerk reads as follows:

"August 30, 1961, Ent. Court upon being advised finds the accounting from the defendant to plaintiff is proper and · ordered defendant to render its accounting within 10 days and plaintiff then has 5 days to object. Daugherty."

It will be observed that the defendants took no exception to this ruling. On the contrary, the defendants in compliance therewith furnished an accounting without objection.

■ The petition alleged a partnership. The answer denied this but admitted an employment contract and the existence of an indebtedness to plaintiff and tendered him the sum of $3,348.78. These admissions, when considered in the light of the allegations of the petition, demonstrate the differences between these parties and the necessity for an accounting. We think it is immaterial whether the relationship between the parties be a partnership, joint

venture or employer and employee relationship. It is evident that money was owing to the plaintiff, no matter what the relation, and that an accounting was necessary and proper as demonstrated by the pleadings. Such being the case, we hold that the first proposition of the defendant is without merit.

The defendants' second proposition, supra, challenges the sufficiency of the evidence to sustain the judgment. It might be helpful here to set out the court's specific findings to which objection is made by the defendants, including the finding mentioned in defendants' Proposition III. The court's findings are:

"II. At the hearing upon plaintiff's objections to said accounting, plaintiff withdrew his objections numbered two (2) and four (4). The Court then considered plaintiff's objections numbered one (1) and three (3), and having heard the testimony of the witnesses, the evidence adduced at the hearing, the statements and arguments of counsel and being fully advised in the premises, finds that plaintiff's objections numbered one (1) and three (3) to defendants' accounting should be and the same are hereby sustained.

"III. The defendants' accounting as filed herein covers the income and expense of the joint venture existing between plaintiff and defendants during the period October 1, 1958 to August 31, 1959, the length of time such venture existed. Said accounting is divided into two time periods, the first being from the inception of the venture (October 1, 1958) until June 30, 1959, and the second being the period beginning July 1, 1959, and ending August 31, 1959.

"The plaintiff has not questioned or challenged the figures used by defendants to arrive at 'Gross Profit' for both of such periods.

"In their accounting, defendants conclude that all expenses of the venture for the first period (October 21, 1958, to June 30, 1959), amounted to $21,514.03, and constituted 37.2% of the gross profit of the venture for such period. Defendants arrived at this percentage by dividing the gross profit for such period ($34,264.09) into the net profit ($12,750.06) of for such period. Defendants then applied this same percentage (37.2%) against the gross profit ($27,043.34) of the second period (July 1, 1959 to August 31, 1959) to arrive at the net profit for such second period.

"IV. Plaintiff's objection numbered one (1) is that the defendants' accounting does not properly reflect expenses for the period beginning July 1, 1959, and ending August 31, 1959, labeled 'uncompleted sales at termination.' Plaintiff alleges that defendants' accounting fails to distinguish between those items of expense which were directly related to the volume of sales made by the venture as opposed to those expenses which were day-to-day, fixed and recurring expenses, thereby distorting the net profit figure for such period.

"V. The expenses listed upon defendants' accounting and labeled 'commissions, salary, travel, freight and express, warehouse, installation, warranty and miscellaneous,' are expenses directly related to and variable with the volume of sales made by the venture. Defendants' accounting shows that these variable expenses for the period beginning October, 1958, and ending June 30, 1959, amount to $12,263.60 and constitute twelve and 41/100 (12.41%) percent of the gross sales during such period. This percentage should be applied against the gross sales shown on defendants' accounting for the second period labeled 'uncompleted sales at termination' to more properly reflect the expenses incurred by the venture·for such period which were directly related to sales, which would amount to $9,235.20.

"VI. The expenses listed upon defendants' accounting and entitled 'rent and utilities, telephone, auto and truck, payroll taxes, bank charges, depreciation, office expense, legal and accounting expense, interest, salaries and wages and sales expense,' are items of expense which existed independently of the volume of sales made by the venture, these being fixed, recurring, day-to-day expenses. These day-to-day and recurring expenses shown for the period beginning October, 1958, and ending June 30, 1959, a nine-month period, amount to $8,312.64. For the two-month period beginning July 1, 1959, and ending August 31, 1959, two-ninths of these expenses for the prior nine-month period (2/9ths of $8,312.64) would more properly reflect the expenses to be charged against the profit of the venture for such period which were not related to sales, and would amount to $1,847.07.

"VII. The remaining expenses labeled 'advertising, insurance, taxes and licenses, ad valorem taxes, dues and subscriptions,' are items of expense which normally occur but once annually. The defendants' accounting reflects that these expenses were incurred during the period beginning October, 1958, and ending June 30, 1959. Having once been charged against the profit of the venture, these expenses cannot properly be charged against the gross profit of the venture for the two-month period beginning July 1, 1959, and ending August 31, 1959, the latter period being within the same twelve-month period."

"VIII. In sustaining plaintiff's objection numbered three (3) it is the Court's opinion that the item charged as an expense in defendants' accounting under the term 'finance reserve' is not properly an expense item, but is an asset, being a part of the income or profit of the venture. The amount of $9,812.96, set up as finance reserve in the defendants' accounting, is not properly deductible from the net profit of the venture."

█ The consideration of the remaining propositions, supra, may be summarized by an examination of the itemized accounting furnished by the defendants in comparison with the items disallowed by the court. The amount of sales and gross profit is not in dispute. This gross profit was $61,307.43. The finding of the court for expenses in the sum of $21,514.03 for the period to June 30, 1959 agrees with the account submitted by the defendants, except for the reserve item hereafter discussed. The differences between the court's accounting and that of defendants arise concerning the period from July 1, 1959 to August 31, 1959, and concerning the reserve fund. The expenses for the period to June 30, 1959, covered the annual expenses. These expenses were projected by defendant on the percentage basis for the July and August period, namely, 37.2% of sales. The item for the annual expenses, which had already been paid in the accounting for the previous period prior to July 1, 1959, was therefore disallowed by the court. We think this was proper and so hold.

█ The remaining item, the reserve fund, was wholly deducted by the accounting by defendants. This reserve fund was $9,812.96. This item was wholly disallowed as a deduction by the court in its accounting. We are convinced that both accounts, that of defendants and that of the court, were improper. There is no assurance that any of this reserve fund will ever come into the hands of defendants. It was a deposit to assure the full payment of the paper in the hands of the finance company. On the other hand, that part of the reserve fund which may be paid to the defendants would belong one-half to plaintiff when and if returned.

The judgment of the trial court is affirmed insofar as it adjudges the plaintiff to recover the sum of $4,368.80, covering all but the reserve fund. The remainder of the judgment, $4,906.48 (being one-half of the

reserve fund), is vacated with directions to the trial court to enter judgment in favor of plaintiff for one-half of the reserve fund to be paid to plaintiff as and when it is free of its obligation to the finance company.

This being an equity case, the trial court may retain jurisdiction to settle all issues between the parties. In the case of Watkins v. McComber, 208 Okl. 352, 256 P.2d 158, the fourth syllabus reads:

"When the District Court has obtained equitable jurisdiction of a controversy it will retain jurisdiction for the purpose of administering complete relief and doing entire justice respecting the subject-matter of the suit."

The cause is modified and affirmed with directions to enter judgment in conformity to this opinion. The costs of this appeal are to be equally divided between the parties hereto. 12 O.S.1961 § 978.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.