**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD SALZER, Individually and on
behalf of others similarly situated,

      Plaintiff–Appellant,

v.

SSM HEALTH CARE OF OKLAHOMA
INC.,

      Defendant–Appellee.

No. 13-6099

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:11-CV-01093-C)**

---

Teresa S. Renaker, (Bradley C. West, The West Law Firm, Shawnee, Oklahoma, with her
on the briefs), Lewis Feinberg Lee Renaker & Jackson, Oakland, California, for the
Plaintiff–Appellant.

Jodi W. Dishman (M. Richard Mullins, Mark D. Spencer, and Elizabeth Bowersox with
her on the briefs), McAfee & Taft, Oklahoma City, Oklahoma, for the Defendant–
Appellee.

---

Before **LUCERO**, **MURPHY**, and **PHILLIPS**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Richard Salzer sued SSM Health Care of Oklahoma, Inc. ("SSM"), alleging breach of contract and other state law claims based on SSM's attempt to collect payment for medical care from Salzer instead of his health insurance company. SSM removed the case to federal district court. Salzer challenges the district court's denial of his motion to remand based on its determination that his claims were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Because "the propriety of removal is judged on the complaint as it stands at the time of the removal," Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1488 (10th Cir. 1991), we draw the following facts from Salzer's original complaint. Salzer received medical care at an SSM facility for injuries he sustained in an accident. At the time of his treatment, he possessed a health insurance plan (the "Plan"). Salzer entered into a contract with SSM to receive its services (the "Hospital Services Agreement"), under which he "authorized disclosure of [his] medical information for billing purposes and authorized [his] health insurance company to pay."

SSM had an existing contract with Salzer's health insurance company (the "Provider Agreement")[1] which required SSM to submit covered medical charges to

---

[1] A "Provider Agreement is a unique type of contract" that is "entered into by hospitals and health care facilities across the country." In re Univ. Med. Ctr., 973 F.2d

Continued . . .

Salzer's insurance company and accept discounted payment from the insurer. Although

the Provider Agreement prohibited SSM from seeking payment for a covered charge

from Salzer, SSM sought the non-discounted amount directly from him.

Salzer filed suit against SSM in Oklahoma state court for breach of contract,

violation of the Oklahoma Consumer Protection Act, deceit, and tortious interference

with contract. He proposed to represent a putative class of certain Oklahoma residents

> who received covered medical care or treatment at the "Defendant's
> Facilities" as the result of injuries for which a third party was potentially
> responsible, and who were insured through a health insurance company that
> maintained a Provider or Participation Agreement with the Defendant, but
> the Defendant collected a payment from, or brought a collection action
> against, or asserted a lien against a patient for a covered charge, other than
> a co-payment, deductible, or co-insurance.

In addition to damages, Salzer sought, on behalf of himself and the putative class,

"specific performance of a contract to which plaintiff is a third party beneficiary"

(referring to the Provider Agreement).

SSM removed the suit to federal district court. In its notice of removal, SSM

alleged that Salzer was a beneficiary of his wife's employee welfare benefit plan operated

by Aetna Health Inc., and that this plan was governed by ERISA. SSM further alleged

that Salzer's claims are preempted because they can be fairly characterized as seeking to

---

1065, 1069, 1081 (3d Cir. 1992) (quotation omitted), superseded by statute on other grounds as stated in In re Mu'min, 374 B.R. 149, 168-69 (Bankr. E.D. Pa. 2007). "It does not provide for a defined transaction or even a series of transactions," but rather "establishes a relationship between the parties." Id. at 1081 (quotation omitted).

recover benefits or enforce rights under an ERISA plan.  Following removal, Salzer

moved to remand the case back to state court.  The district court denied Salzer's motion,

holding that his claims were completely preempted by ERISA.[2]  Salzer filed a motion for

relief pursuant to Fed. R. Civ. P. 60(b), which was also denied.

Salzer then filed an amended complaint that largely reasserted his original claims

and added other state law claims.  SSM responded with a motion to dismiss the suit for

failure to state any ERISA claims.  The district court granted SSM's motion and

dismissed the case with prejudice, concluding that the amended complaint disregarded

the court's prior orders by continuing to argue that ERISA did not preempt the lawsuit

and failed to allege any ERISA violations.  Salzer timely appealed.

## II

The district court denied Salzer's motion to remand to state court based on its

determination that his claims were preempted by ERISA.  "We review de novo the

question of whether Plaintiffs' state law claims are completely preempted."  Felix v.

Lucent Techs., Inc., 387 F.3d 1146, 1153 (10th Cir. 2004).  We also review de novo the

district court's denial of a motion to remand for lack of removal jurisdiction.  Garley v.

Sandia Corp., 236 F.3d 1200, 1207 (10th Cir. 2001).

A defendant may remove a civil action initially brought in state court if the federal

---

[2] The court also rejected Salzer's contention that the removal was untimely.  On appeal, Salzer does not meaningfully challenge the court's timeliness determination.

district court could have exercised original jurisdiction. 28 U.S.C. § 1441(a). However, a federal court must remand a removed action back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." § 1447(c). The party invoking federal jurisdiction has the burden to establish that it is proper, and "there is a presumption against its existence." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).

"One category of cases over which the district courts have original jurisdiction are 'federal question' cases; that is, those cases 'arising under the Constitution, laws, or treaties of the United States.'" Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (quoting 28 U.S.C. § 1331). In determining the existence of federal question jurisdiction, courts are "guided generally by the 'well-pleaded complaint' rule, under which a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law." Turgeau v. Admin. Rev. Bd., 446 F.3d 1052, 1060 (10th Cir. 2006) (quotation omitted). Thus, as a general matter, the plaintiff "may prevent removal to federal court by choosing not to plead a federal claim even if one is available." Id. (quotation and alteration omitted). The doctrine of "complete preemption," however, is "a corollary or an exception to the well pleaded complaint rule," under which "a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character." Id. at 1061 (quotation omitted). "[O]nly a few federal statutes [] so pervasively regulate their respective areas that they have complete preemptive force;

-5-

ERISA is one." Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1221 (10th Cir. 2011).

The dispositive question before us is whether Salzer's claims are completely preempted by ERISA. "[C]auses of action within the scope of the civil enforcement provision of [ERISA] § 502(a) [are] removable to federal court." Taylor, 481 U.S. at 66. In Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), the Supreme Court laid out a two-part test for determining whether a claim falls within the scope of the civil enforcement provision: "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." Id. at 210.[3] The civil enforcement provision allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

_____

[3] Salzer's argument on appeal that removal requires "conflict" or "express" preemption under ERISA § 514 as well as complete preemption under § 502(a) is incorrect. See Davila, 542 U.S. at 214 n.4 (rejecting this argument). Salzer misconstrues our cases explaining that a claim preempted under § 514 must also fall under § 502(a) to be completely preempted. See, e.g., Felix, 387 F.3d at 1156-58. Section 514 "creates a federal defense of preemption to a substantive state-law claim that may be asserted in either state or federal court, but it does not of its own force create federal jurisdiction." Hansen, 614 F.3d at 1221 (emphases omitted). We therefore do not reach the question of § 514 preemption.

## A

We conclude that five of Salzer's six original claims do not fall under ERISA § 502(a)(1)(B) because they do not seek to vindicate rights set forth in the "terms of the plan," as required by that provision. A claim meets the first prong of the Davila test if it asserts rights to which the plaintiff is entitled "only because of the terms of an ERISA-regulated employee benefit plan." Davila, 542 U.S. at 210 (emphases added). In his claims for breach of contract, violation of the Oklahoma Consumer Protection Act, deceit, specific performance, and punitive damages, Salzer does not assert claims for benefits under his Plan, nor does he seek to enforce or clarify rights under the Plan. Instead, he complains that SSM did not fulfill its obligation to submit charges for his care to the insurer, but instead billed him directly. The contracts under which these claims arise are the Provider Agreement and the Hospital Services Agreement, not the Plan. See Anderson v. Ochsner Health Sys., No. 11-2236, 2012 WL 2116173, at *4 (E.D. La. June 11, 2012) (unpublished) (patient's claim against health care provider as third-party beneficiary to provider agreement was not preempted by ERISA because the claim "does not involve a denial of benefits" and thus could not be brought under § 502(a)).

Because Salzer seeks to enforce contracts other than the Plan in these five claims, the claims also fail the second prong of the Davila preemption test, which requires that no "independent legal duty" other than ERISA be implicated. 542 U.S. at 210. The district court concluded that Salzer, "as a patient, is not a party to the provider agreement [between SSM and Aetna] and, therefore, does not have independent rights that do not

-7-

derive from the ERISA benefit plan." But Salzer alleges that SSM violated duties it owed to him under the Hospital Services Agreement—to which he is a party—and that he is a third-party beneficiary to the Provider Agreement. See Denver Health & Hosp. Auth. v. Beverage Distrib. Co., 546 F. App'x 742, 747 (10th Cir. 2013) (unpublished) ("[E]xtrinsic documents relevant to the plan . . . do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." (quotation omitted)). Salzer also alleges in these claims that by improperly billing him in violation of the above-cited agreements, SSM violated state statutory duties and common law tort duties.

Some courts have held that patients cannot make out claims under provider agreements. Blue Cross of Cal. v. Anesthesia Care Assoc. Med. Grp., Inc., 187 F.3d 1045, 1051 (9th Cir. 1999) (holding that health care providers' claims against insurer for violation of a provider agreement were not covered by § 502(a)(1)(B) in part because direct contract claims could not have been asserted by patients); Mem'l Hermann Hosp. Sys. v. Aetna Health Inc., No. H-06-00828, 2007 WL 1701901, at *5 (S.D. Tex. June 11, 2007) (unpublished) (same). We agree that claims based on a provider agreement do not necessarily fall within § 502(a)(1)(B), and note that these courts did not consider the possibility of a third-party beneficiary claim. See Arthur Andersen, LLP v. Carlisle, 556 U.S. 624, 631 (2009) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . third-party beneficiary theories . . . ." (quotation omitted)). Moreover, the merit of Salzer's claim that he is a third-party beneficiary of the Provider Agreement is not properly part of our

jurisdictional analysis as to the removal question. The possibility that Salzer fails to

make out a winning state law claim does not indicate that complete preemption applies.

SSM argues that Salzer's claims depend on the Plan because his complaint refers

to "covered charges" and because his asserted third-party beneficiary status under the

Provider Agreement exists via his status as a beneficiary of an ERISA plan. As an initial

matter, references to "covered charges" in the complaint merely acknowledge that SSM

was permitted to charge Salzer directly for co-payments, co-insurance, and deductibles.

It is not entirely clear to us that "covered charges" refers to charges covered by the Plan;

the most natural reading of the complaint suggests that "covered charges" means charges

covered by the Provider Agreement.[4] SSM affirmatively alleged in its notice of removal

that its hospitals' contracts with Aetna "define the obligation of the hospitals to provide

medical treatment for 'Covered Benefits' . . . as well as Aetna's corresponding

responsibility to reimburse the hospitals for the services." Further, we agree with the

Ninth Circuit's determination that references to "covered billed charges" in a provider

agreement do not establish that a claim for breach of a provider agreement is completely

preempted. Blue Cross of Cal., 187 F.3d at 1051 ("Where the meaning of a term in the

Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of

---

[4] Unfortunately, the parties have neglected to include in the record the actual agreements at issue. We therefore must base our decision on the allegations contained in the original complaint and the uncontested allegations in the notice of removal. See McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008); Pfeiffer, 929 F.2d at 1488.

-9-

litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision.").

The Provider Agreement may be related to the Plan in some way, but on the record before us, SSM has not shown that the Plan "forms an essential part," Davila, 542 U.S. at 213, of Salzer's claims related to improper billing. See David P. Coldesina, D.D.S., P.C., Empl. Profit Sharing Plan & Trust v. Estate of Simper, 407 F.3d 1126, 1137 (10th Cir. 2005) (no ERISA preemption where "any connection to the plan is fortuitous"). The same district court that decided the present matter recently held that ERISA preemption does not apply to claims based primarily on contracts other than an insurance plan if the plan plays only a tangential role in the claim:

> Plaintiff's claims primarily hinge upon an agreement she claims she was forced to sign in order to obtain medical care and whether or not that agreement violates Oklahoma contract law or some other provision of Oklahoma law. Her health insurance or that of any other of the class plaintiffs plays at most only a peripheral role in the claim.

Cargill v. Norman Reg'l Health Sys. and/or Norman Reg'l Hosp. Auth., No. CIV-12-0180-C, slip op. at 3 (W.D. Okla. Apr. 10, 2012) (unpublished); see also Anderson, 2012 WL 2116173, at *4 ("ERISA does not completely preempt [plaintiff's] contract claims and her right to sue as a third party beneficiary for breach of" a provider agreement).

We acknowledge that another decision from the Western District of Oklahoma concluded that an ERISA plan beneficiary's suit against a health care provider for failing to submit claims according to the terms of a provider agreement was preempted because her "status as a third-party beneficiary is dependent on her participation in the ERISA

Plan in the first place."  Cates v. Integris Health, Inc., No. CIV-12-0763-HE, 2012 WL 5456093, at *3 (W.D. Okla. Nov. 7, 2012) (unpublished).  But we find this connection too attenuated to meet the Davila standard.  See David P. Coldesina, 407 F.3d at 1138 (ERISA preemption does not apply if plan is merely "part of the factual backdrop of th[e] case").  We conclude that Cargill's reasoning is the more persuasive, and that a substantively similar analysis applies to the case at bar.

In five of his claims, Salzer has alleged that SSM breached its contractual duties under the Provider Agreement and the Hospital Services Agreement by billing him directly for services, and that in doing so the company also violated state statutory and tort law.  SSM has not shown that these claims seek to enforce rights that exist under the terms of the Plan, nor has it rebutted Salzer's allegations that these claims rest on legal duties independent of the Plan.  Accordingly, we conclude that these claims are not subject to complete ERISA preemption on the record before us.

**B**

We reach the opposite conclusion as to Salzer's remaining claim, for tortious interference with contract.  In that claim, Salzer alleges that "[a]ccording to each class member's contract for health insurance, each class member should have received a discount for the medical services provided by Defendant," and that SSM's failure to bill the insurance companies "deprived each class member of the benefit of their health insurance."

Unlike the other claims in Salzer's complaint, this claim depends entirely upon the

existence of a benefit contained in an ERISA plan.[5] In this respect, the claim is highly

analogous to those considered in Davila. There, plaintiffs asserted claims under a state

statute that "impose[d] a duty on managed care entities to exercise ordinary care when

making health care treatment decisions, and ma[de] them liable for damages proximately

caused by failures to abide by that duty." Davila, 542 U.S. at 212 (quotation omitted).

But the statute did not oblige managed care entities "to provide to an insured or enrollee

treatment which is not covered by the health care plan of the entity." Id. at 213

(quotation omitted). The Court explained that this interaction resulted in complete

preemption:

> [I]nterpretation of the terms of [plaintiffs'] benefit plans forms an essential part of their [state-law] claim, and . . . liability would exist here only because of [defendants'] administration of ERISA-regulated benefit plans. [Defendants'] potential liability under [state law] in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans. . . .
> Hence, [plaintiffs] bring suit only to rectify a wrongful denial of

---

[5] The complaint refers to health insurance plans generally rather than specifically identifying a plan subject to ERISA. However, SSM alleged in its notice of removal that Salzer's Plan is "an employee welfare benefit plan governed by ERISA" because it was established and maintained by Hospital Corporation of America, an employer engaged in commerce or an industry affecting commerce. See 29 U.S.C. § 1003(a) (ERISA covers employee benefit plans established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce" subject to certain exceptions). Salzer did not dispute this below, and despite his contention on appeal that SSM has not carried its burden of proving the Plan is governed by ERISA, he does not contest SSM's material factual allegations. Accordingly, we accept the allegations as true. See 28 U.S.C. § 1446(a) (notice of removal must contain "a short and plain statement of the grounds for removal"); McPhail, 529 F.3d at 955 ("[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." (quotation omitted)).

benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA. We hold that [plaintiffs'] state causes of action fall within the scope of ERISA § 502(a)(1)(B), and are therefore completely pre-empted by ERISA § 502 and removable to federal district court.

Id. at 213-14 (quotation and citation omitted).

As in Davila, Salzer's claim for tortious interference can succeed only if his ERISA plan actually entitled him to a discount for the services provided by SSM. Accordingly, interpretation of the Plan is a necessary component of the claim and thus the legal duty at issue cannot be described as "independent of ERISA." Id. at 214. His right to relief depends upon Plan provisions.

For largely the same reason, we conclude that Salzer's tortious interference claim meets the first prong of the Davila test. Salzer "could have brought his claim under ERISA § 502(a)(1)(B)," id. at 210, because it is one "to enforce his rights under the terms of the plan," ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). According to the unambiguous allegations in the complaint, Salzer seeks a remedy because he was "deprived . . . of the benefit of [his] health insurance." Although the Plan is not contained in the record, Salzer has affirmatively alleged that he was entitled to a discount that "derives entirely from the particular rights and obligations established by the" terms of the Plan, Davila, 542 U.S. at 213, and that SSM's actions deprived him of that benefit.

Because Salzer's tortious interference claim is one seeking to enforce rights under the terms of an ERISA plan, and does not rest on a legal duty independent of an ERISA plan's terms, Davila mandates complete preemption of that claim. Although we have

-13-

concluded that most of Salzer's claims are not preempted, federal jurisdiction over any one claim is sufficient to support removal. See Gilmore v. Weatherford, 694 F.3d 1160, 1176 (10th Cir. 2012) ("[I]f any one claim within Plaintiffs' complaint supports federal question jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged state-law claims, arising from the same core of operative facts." (quotation omitted)); see also 28 U.S.C. § 1441(a) (permitting removal of any case over which district court could have exercised original jurisdiction).[6]

### III

For the foregoing reasons, we **AFFIRM**.

---

[6] Although we conclude that not all of the claims in Salzer's original complaint are completely preempted, he fails to challenge the dismissal with prejudice of the claims in his amended complaint. See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").