CATES v. INTEGRIS HEALTH, INC.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:CATES v. INTEGRIS HEALTH, INC.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 CATES v. INTEGRIS HEALTH, INC.
2018 OK 9
Case Number: 114314
Decided: 01/30/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 9, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

ELIZABETH CATES, individually and on behalf of others similarly situated, Plaintiff/Appellant,
v.
INTEGRIS HEALTH, INC., an Oklahoma corporation, Defendant/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY,
THE HONORABLE JUDGE ROGER STUART, PRESIDING 

¶0 Plaintiff/Appellant is a former patient of Defendant/Appellee's medical facility and claims that Defendant/Appellee wrongfully billed her, and others like her, for services. She filed this action in state court, alleging state-law claims for breach of contract, violation of the Oklahoma Consumer Protection Act, and deceit. Defendant/Appellee successfully moved to dismiss these claims on the ground that they are expressly preempted by the federal Employee Retirement Income Security Act. On appeal, we reversed and held that Plaintiff/Appellee's claims are not preempted. We now grant rehearing, vacate our prior opinion, and issue the following opinion that reaches the same result.[1]

REHEARING GRANTED; OPINION OF THE COURT ISSUED JUNE 19, 2017,
WITHDRAWN; JUDGMENT OF THE DISTRICT COURT REVERSED; CASE
REMANDED FOR FURTHER PROCEEDINGS

Terry W. West, Bradley C. West, Gregg W. Luther, and J. Shawn Spencer, The West Law Firm, Shawnee, Oklahoma, for Plaintiff/Appellant.

Kevin D. Gordon and Alison M. Howard, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee.

Wyrick, J.:

¶1 Elizabeth Cates claims that Integris wrongfully billed her for services she received after being admitted to one of Integris's facilities following a car accident. She also claims that Integris has performed the same wrongful billing practice on other patients. The question in this appeal is whether these patients may pursue state-law remedies for their alleged harms.

¶2 Cates brought state-law claims for breach of contract, deceit, and violation of the Oklahoma Consumer Protection Act, 15 O.S. §§ 751 et seq. But Integris argues that Cates's claims are expressly preempted by the federal Employee Retirement Income Security Act[2] (ERISA). This is so, says Integris, because the claims "relate to" an ERISA plan.[3] According to Integris, Cates may vindicate her rights only through pleading a claim under the cause of action established in ERISA.[4] The district court agreed with Integris and dismissed Cates's claims. We now reverse and hold that Cates's state-law claims are not expressly preempted and may proceed below.

I.

¶3 This case arises out of two agreements: one between Cates and Integris, the other between Integris and Cates's health insurance Participating Provider Organization (PPO). The agreement between Cates and Integris is a hospital admission form she signed that provides the promise of healthcare and services in exchange for Cates's promise to comply with hospital rules.[5] It also specifies that Cates is responsible for all charges "that remain after any third party payment . . . unless the Hospital is prohibited by contract between third party and Hospital from billing Patient for these amounts."[6] The second agreement at issue, the one between Integris and the PPO, is called a "Participating Hospital Agreement," and it secures medical services for insurance-plan beneficiaries in exchange for the hospital's promise to accept pre-arranged, discounted prices.[7] According to Cates, it also specifies that the hospital may not bill her "except for a copay or deductible or coinsurance, or, in cases where Integris has confirmed the services are not covered, advised the patient the services are not covered prior to delivering the services, and the patient agreed to pay for those services."[8]

¶4 Cates argues that these two agreements work in tandem to require Integris first to submit all charges to her insurance provider before billing her directly.[9] She alleges that following her hospital visit, Integris did not submit the charges to her insurer as required, but instead simply filed and asserted a lien against her. She also alleges that Integris has employed the same billing tactic with many of its patients.[10] Accordingly, Cates brought a class action against Integris alleging the following four claims: (1) breach of contract, (2) breach of contract to which Cates is a third-party beneficiary, (3) violation of the Oklahoma Consumer Protection Act, and (4) "deceit."[11]

¶5 Integris countered that Cates's claims were "completely" preempted, meaning that they should be treated as federal ERISA claims and could be removed to federal court.[12] Upon removal, however, the federal courts disagreed and remanded the case back to state court for lack of subject-matter jurisdiction.[13]

¶6 Integris now argues that Cates's state-law claims are "expressly" preempted, meaning that they cannot be brought at all.[14] The Oklahoma district court agreed and granted Integris's motion to dismiss on that basis. Cates then filed this appeal, which we retained.

II.

¶7 The standard of review for a district court's decision granting a motion to dismiss[15] is de novo.[16] The purpose of such a review is to test the law that governs the claim, not the underlying facts.[17] As such, we take all factual allegations in the petition as true and draw all reasonable inferences therefrom.[18] We also do not require the plaintiff to specify a theory of recovery, nor a particular remedy.[19] If relief is possible under any set of facts that can be gleaned from the petition, the motion to dismiss should be denied.[20]

¶8 The particular law tested in this motion to dismiss is ERISA express preemption--a treacherous "thicket" for any court to navigate.[21] The basis for ERISA express preemption is found at 29 U.S.C. § 1144(a), which states "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] plan." The key in that standard is the phrase "relate to."[22] The U.S. Supreme Court has said that those words give ERISA a preemption clause that is "conspicuous for its breadth,"[23] preempting anything that "relates to" an ERISA plan in the "normal . . . common sense" meaning of the phrase.[24] But the Supreme Court has also said that "relate to" cannot be taken to its logical extreme, lest we find ourselves playing Six Degrees of ERISA, where everything eventually relates to an ERISA plan.[25] Our job is thus to determine whether Cates's claims fairly "relate to" her ERISA plan, not in the broadest sense of the phrase, but rather in its "normal . . . common sense" meaning.

A.

¶9 Integris argues that Cates's claims "relate to" an ERISA plan because they cannot be decided without reference to her underlying employee benefit plan--a.k.a the ERISA "Plan."[26] Specifically, Integris contends that "any right to have INTEGRIS bill and accept payment from the Plan rather than Plaintiff, applies only to services covered under the terms of the Plan,"[27] and thus that Cates's claims cannot be adjudicated without interpretation of what is and is not a "covered" charge under the plan.[28] This is especially true, argues Integris, because the real right Cates seeks to vindicate is her right to receive an in-network discount for the services rendered--a discount that applies only to "covered" services under the plan.[29] If Integris is correct, it would appear that its express-preemption defense is a strong one.[30]

¶10 Integris's argument, however, misapprehends the thrust of Cates's case. Cates isn't asking for Integris to accept payment from her health insurer for these bills, and she isn't looking for a discount.[31] Rather, Cates says that the two contracts she references (the admission form and the PPO agreement) prohibit Integris from billing her at all if Integris did not first submit those charges for confirmation of coverage and authorization. In other words, under Cates's theory, it does not matter whether the charges were "covered," only whether they were first submitted to the insurer. Accordingly, there would be no need to reference and interpret the ERISA plan in order to ascertain what was and wasn't "covered" or to itemize her bill into what would or wouldn't have been discounted. In the words of Plaintiff's counsel, if Integris failed to first submit the charges to the insurer, Integris "get[s] zero."[32]

¶11 An examination of each of Cates's claims bears this out. First is her claim for breach of contract, the elements of which are (1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach.[33] Cates alleges she formed a contract with Integris when she signed the hospital admission form[34] providing that she would be responsible for payment "unless the Hospital is prohibited by contract between third party and Hospital from billing Patient for these amounts."[35] She claims that such a third-party contract exists (the PPO agreement) and that it prohibits Integris from billing her unless it first submits the charges to her insurer for review. She further alleges that Integris billed her without first submitting the charges to her insurer for review, thus breaching both the PPO agreement and the admission form. Cates also alleges that Integris filed and asserted a lien against her for the relevant charges and that she and every other putative class member have suffered damages as a result of Integris's billing practices.[36] Assuming each of these allegations to be true, Cates has stated a colorable claim for relief--and has done so without reference to the ERISA plan.

¶12 The same is true of Cates's claim for breach of a contract to which she is a third-party beneficiary (i.e., the PPO agreement), as it was necessarily breached as part of her first claim, and the only additional element she must prove is that the PPO agreement was made expressly for her benefit.[37] Cates alleges as much in her petition,[38] and we have no trouble inferring that a PPO agreement is made for the express benefit of the insurance beneficiaries receiving services under it.

¶13 Cates's third claim alleges a violation of the Oklahoma Consumer Protection Act, 15 O.S. §§ 751 et seq. That law authorizes "a private right of action" whenever a person commits "any act or practice declared to be a violation of the Consumer Protection Act."[39] Cates claims a violation of the provisions that prohibit "[k]nowingly caus[ing] a charge to be made by any billing method to a consumer for services . . . or products which the person knows was not authorized in advance by the consumer."[40] Again, based on Cates's interpretation of the two agreements at issue,[41] there is a conceivable set of facts by which she could establish that she did not consent to the relevant charges and that Integris knew that when it billed her--and again, she could do all of this without reference to the ERISA plan.

¶14 Cates's last claim is for what she calls "deceit." In this count, she alleges that Integris, through filing and asserting its lien against each putative class member, represented that each class member was indebted to Integris.[42] She then claims that the representation--in light of her theory of the case--is false, that it is material, that Integris made it either with knowledge that it was false or with reckless disregard for its truth, that Integris made it with the intention that each class member act upon it, and that each class member has been harmed as a result.[43] This sounds a lot like the basis for a common-law fraud claim,[44] especially if Cates could establish that class members relied on the lien in paying on the debt or otherwise acting to their detriment. This claim can also be made without any reference to the ERISA plan; the only documents Cates needs are the lien, the two agreements she relies upon to demonstrate that it was wrongfully filed, and whatever evidence she has to demonstrate she acted upon it to her detriment. A set of facts thus exists for which relief would be possible without reference to the ERISA plan.

B.

¶15 Because we are applying federal law, we are cognizant of federal court decisions analyzing ERISA preemption. The conclusion we reach today is consistent with those decisions. Most analogous is the Seventh Circuit's decision in Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.[45] In Kolbe, the ERISA plan itself sought to bring state-law, breach-of-contract claims against a hospital, alleging--just as Cates--that the hospital had breached third-party-provider agreements to which the plaintiffs were express beneficiaries.[46] There, the hospital had requested, accepted, and retained payment from the plan for services rendered to a patient that was not an insured under the plan.[47] The plan argued that this was a breach of the network provider agreements because those agreements naturally provided insurance payments only for services provided to insurance beneficiaries.[48] The district court dismissed the plan's claims as expressly preempted, but the Seventh Circuit reversed, holding that those claims "d[id] not require interpreting or applying the Plan, nor d[id] [they] relate to the Plan in any significant way."[49] Just as here, the court explained that "plaintiffs' pleadings make it unnecessary to review the Plan," and that the state-law claims could be resolved with reference to only "the member or service agreements and the provider agreements."[50] The Seventh Circuit then bolstered its decision with the conclusion that "plaintiffs' state law breach of contract action is an area of traditional state regulation that contains allegations which seek to satisfy the statutory objectives of ERISA and is not an alternative enforcement mechanism of ERISA."[51] The same is true here.

¶16 We are also persuaded by two other federal appellate decisions in which a healthcare provider was the plaintiff seeking to avoid express preemption.[52] In those cases the healthcare providers treated patients after receiving assurances from the ERISA plan[53] that the services were covered, but were then denied payment from the plan once the providers submitted their requests.[54] In holding that the providers' claims were not preempted, both courts noted that the providers' relevant state-law claims did not seek to recover benefits under the ERISA plans, but rather sought to recover damages that resulted from the providers' reliance on the plans' alleged misrepresentations.[55] In other words, plaintiffs were--as here--pressing claims that did not rely on an interpretation of the plan in order to secure relief.[56]

¶17 These federal courts also looked to two other factors that support today's decision. First, the courts also looked to the capacity of the parties as an indication that the claims were not preempted.[57] The Fifth Circuit in Memorial Hospital System explained that "the most important factor for a court to consider in deciding whether a state law affects an employee benefit plan 'in too tenuous, remote, or peripheral a manner to be preempted' is whether the state law affects relations among ERISA's named entities"--i.e., "the employer, the plan, the plan fiduciaries, and the beneficiaries."[58] The court then held that because the hospital sued in its capacity as a hospital (rather than in its capacity as the assignee of patient's benefits) and because the insurer was sued based solely on its promise to pay (rather than on its obligations under the ERISA plan), these claims did not threaten to impact the relations between two ERISA entities, and thus were not what Congress intended to eliminate when it decided to preempt that which might "relate to" an ERISA plan.[59] The Tenth Circuit cited Memorial Hospital System to hold the same in Hospice of Metro Denver, Inc.[60]

¶18 Second, the federal courts asked whether the plaintiffs would have adequate alternative recourse in the event their state-law claims were preempted--in other words: could they bring federal-law claims under ERISA?[61] In both cases, the plan had denied payment upon its determination that the services rendered were not covered under the express terms of the plan, which, as both courts explained, meant that the provider would not be successful in the event it sought recovery under the ERISA cause of action.[62] While both courts noted that the lack of a remedy under ERISA does not normally affect a preemption determination, both courts nevertheless found it useful to consider--especially in terms of whether such a result furthered Congress's intent with ERISA.[63] As the Fifth Circuit explained in Memorial Hospital System:

If providers have no recourse under either ERISA or state law in situations such as the one sub judice (where there is no coverage under the express terms of the plan, but a provider has relied on assurances that there is such coverage), providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries--or impose other inconveniences--before treatment will be offered. This does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA.[64]

¶19 Both factors cut in favor of allowing Cates's claims to proceed in this case. First, Cates's claims do not affect the relations between ERISA entities. The healthcare provider in this case (Integris) is not Cates's employer, the ERISA plan, or a plan fiduciary, nor is it acting in the capacity of the beneficiary in this lawsuit. As in the two cases above, Integris is merely acting as a hospital. Moreover, Cates (the plan beneficiary) isn't acting in her capacity as an ERISA principal, as she is not using this action to recover benefits under the terms of her plan. Rather, she is seeking to enforce a promise made outside the ERISA plan, again just like the claimants in the two previously cited cases. Cates is merely a patient suing her hospital--nothing more.

¶20 Second, the result of Integris's argument is that Cates is left without any legal recourse to challenge its billing practices. While arguably Cates could file an ERISA claim against Integris to enforce her rights under the plan,[65] she can prevail only if the services were actually covered by her ERISA plan. If Integris is right, however, and the services Cates received were not covered, then Cates is in the very same position as the hospitals would have been in the two cases above: left holding the bag. "Congress's primary purpose in enacting ERISA," however, "was to protect the interests of plan beneficiaries,"[66] and the Fifth Circuit in Memorial Hospital System explained that when providers erect obstacles to those beneficiaries' procurement of services, the providers "directly defeat" Congress's purpose.[67] If Integris was required to submit Cates's bill to a third party as part of the bargain struck for healthcare, Integris's refusal to do so represents the very kind of obstacle Congress sought to eliminate, and one that we think Congress would want removed even if state law must do the lifting.

* * *

¶21 Based on the allegations in Cates's petition, we hold that she has stated claims for relief that do not "relate to" her ERISA plan as that term has been interpreted by the federal courts. Accordingly, Integris's motion to dismiss on the ground of express preemption should have been denied. The judgment of the trial court is therefore reversed, and the case is remanded with instructions to proceed in a manner consistent with this opinion.[68]

Combs, C.J., Gurich, V.C.J., Winchester, Edmondson, Reif, and Wyrick, JJ., concur.

Colbert, J., dissents.

Kauger, J., not participating.

FOOTNOTES

[1] See Tomahawk Res., Inc. v. Craven, 2005 OK 82, ¶ 1, 130 P.3d 222, 224-25 (supp. op. on reh'g) (listing the reasons for granting rehearing).

[2] 29 U.S.C. §§ 1001 et seq. (2012).

[3] See id. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.").

[4] See id. § 1132.

[5] See ROA, Doc. 6, Pl. Class Members' Am. Resp. to Mot. to Dismiss, Ex. 2, at 1 ("In consideration of admission and/or treatment, the patient agrees to abide by the rules of the Hospital."); see also id. at 2 ("The patient hereby assigns to Hospital all benefits under any insurance policy, health plan, worker's compensation or other third party payor liable to the patient, in consideration for services rendered by the Hospital.").

[6] Id. at 2 ("The undersigned understands that the patient, or another person who specifically agrees to guarantee payment for the patient, is responsible for the payment of all charges of the Hospital relating to services rendered by the Hospital to the patient that remain after any third party payment (which include, but are not limited to, applicable coinsurance, co-payments, deductibles and amounts for services or treatments that are not covered or for which payment has been denied by any third party) unless the Hospital is prohibited by contract between third party and Hospital from billing Patient for these amounts.").

[7] See ROA, Doc. 4, Def.'s Mot. to Dismiss, at 2.

[8] See ROA, Doc. 10, Tr. of Hr'g on Def.'s Mot. to Dismiss, at 15:4-9 ("[The PPO agreement] prohibits hospital from billing [the patient] except for a copay or deductible or coinsurance, or, in cases where Integris has confirmed the services are not covered, advised the patient the services are not covered prior to delivering the services, and the patient agreed to pay for those services prior."). The copy of the PPO agreement was filed under seal and was not included as part of the record on appeal.

[9] ROA, Doc. 3, First Am. Pet., at 3.

[10] Id. at 4.

[11] Id. at 4-5.

[12] See generally Aetna Health Inc. v. Davila, 542 U.S. 200, 207-09 (2004) (describing the effect of complete preemption); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987) (same).

[13] Cates v. Integris Health, Inc., No. 5:12-cv-00763-F, 2014 WL 12493272, at *6 (W.D. Okla. Sept. 30, 2014); see also Salzer v. SSM Health Care of Okla. Inc., 762 F.3d 1130, 1137 (10th Cir. 2014) (opining that the connection between Cates's claims and her ERISA plan was "too attenuated" to support complete preemption).

[14] See generally Davila, 542 U.S. at 208-09 (describing the effect of ERISA's express preemption provision (29 U.S.C. § 1144(a)) and distinguishing it from complete preemption); see also Scott D. Pomfret, Emerging Theories of Liability for Utilization Review Under ERISA Health Plans, 34 Tort & Ins. L.J. 131, 145 n.83 (1998) (explaining and distinguishing complete and express preemption).

[15] There was some confusion below as to whether Integris's motion to dismiss should have been converted to one for summary judgment in light of the materials attached to the briefs. See 12 O.S.2011 § 2012(B) ("If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment."). Because the motion could have been decided with reference only to the petition and those materials referenced by and integral to the petition, we agree with the district court's decision that the motion need not be converted to one for summary judgment. See Tucker v. Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112, ¶ 30, 341 P.3d 673, 684-86; see also KMC Leasing, Inc. v. Rockwell-Standard Corp., 2000 OK 51, ¶ 13, 9 P.3d 683, 688-89 ("We will presume the trial court found every special thing necessary to be found to sustain the general finding and conclusion." (internal quotation marks omitted)); Armstrong v. Gill, 1964 OK 88, ¶ 8, 392 P.2d 737, 738 ("[T]here [is] a presumption that the court acted properly and did all that was necessary to sustain the proceedings . . . .").

[16] Dani v. Miller, 2016 OK 35, ¶ 10, 374 P.3d 779, 785.

[17] Id. ¶ 10, 374 P.3d at 785-86.

[18] Id. ¶ 10, 374 P.3d at 786.

[19] Id.

[20] Id. ¶ 11, 374 P.3d at 786.

[21] See Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d 1182, 1184 (10th Cir. 2003) ("[A]ny court forced to enter the ERISA preemption thicket sets out on a treacherous path." (alteration in original) (quoting Gonzales v. Prudential Ins. Co., 901 F.2d 446, 451-52 (5th Cir. 1990))).

[22] Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990).

[23] FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990).

[24] Ingersoll-Rand Co., 498 U.S. at 139.

[25] See N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere." (internal quotation marks and citation omitted)).

[26] ROA, Doc. 4, Def.'s Mot. to Dismiss, at 17.

[27] Id. at 3.

[28] Id. at 17.

[29] Id. at 2-3, 17.

[30] See Ingersoll-Rand Co., 498 U.S. at 140 ("Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan." (alteration in original)).

[31] ROA, Doc. 10, Tr. of Hr'g on Def.'s Mot. to Dismiss, at 38:18-24 ("We're not looking for a discount. [Integris] do[es]n't get anything. They get zero because they didn't play by the rules. And so, they keep trying to redraft this to be a discount that's controlled by the PPO. No, they can't bill us. Period. Period. They can't bill us. That's our argument, no matter how many times [defense counsel] tries to restate it, that's our argument.").

[32] Id.

[33] Dig. Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834, 843.

[34] Counsel for Integris also appears to have conceded the contractual nature of this form, stating after the trial court asked whether counsel agreed that Cates has a contract with the hospital: "Well, it's an admitting form and, yeah, it does--it does look like a contract, yeah, it provides obligations." ROA, Doc. 10, Tr. of Hr'g on Def.'s Mot. to Dismiss, at 17:25-18:2.

[35] ROA, Doc. 6, Pl. Class Members' Am. Resp. to Mot. to Dismiss, Ex. 2, at 2 (emphasis added).

[36] ROA, Doc. 3, First Am. Pet., at 3-4

[37] See Great Plains Fed. Sav. & Loan Ass'n v. Dabney, 1993 OK 4, ¶ 9, 846 P.2d 1088, 1093.

[38] ROA, Doc. 3, First Am. Pet., at 5.

[39] 15 O.S.2011 § 761.1(A).

[40] Id. § 753(25)-(26).

[41] See ROA, Doc. 6, Pl. Class Members' Am. Resp. to Mot. to Dismiss, Ex. 2, at 2 ("The undersigned understands that the patient, or another person who specifically agrees to guarantee payment for the patient, is responsible for the payment of all charges of the Hospital relating to services rendered by the Hospital to the patient that remain after any third party payment (which include, but are not limited to, applicable coinsurance, co-payments, deductibles and amounts for services or treatments that are not covered or for which payment has been denied by any third party) unless the Hospital is prohibited by contract between third party and Hospital from billing Patient for these amounts."); ROA Doc. 10, Tr. of Hr'g on Def.'s Mot. to Dismiss, at 15:4-9 ("[The PPO agreement] prohibits the hospital from billing [the patient] except for a copay or deductible or coinsurance, or, in cases where Integris has confirmed the services are not covered, advised the patient the services are not covered prior to delivering the services, and the patient agreed to pay for those services prior.").

[42] ROA, Doc. 3, First Am. Pet., at 4.

[43] Id. at 4-5.

[44] See Bowman v. Presley, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1217-18 (listing the elements of common-law fraud as: "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment").

[45] 657 F.3d 497 (7th Cir. 2011).

[46] Id. at 504.

[47] Id.

[48] Id. at 500-01, 504.

[49] Id. at 504 (citing Trs. of the AFTRA Health Fund v. Biondi, 303 F.3d 765, 780 (7th Cir. 2002)).

[50] Id. at 504-05.

[51] Id. at 505 (citing Biondi, 303 F.3d at 773-82).

[52] See Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc., 944 F.2d 752 (10th Cir. 1991); Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990).

[53] In Memorial Hospital System, the plaintiff provider received assurance from the plan beneficiary's employer, whom the provider claimed was acting as the ERISA plan's agent. 904 F.2d at 238.

[54] Hospice of Metro Denver, Inc., 944 F.2d at 753; Mem'l Hosp. Sys, 904 F.2d at 238.

[55] Hospice of Metro Denver, Inc., 944 F.2d at 754; Mem'l Hosp. Sys, 904 F.2d at 244.

[56] Hospice of Metro Denver, Inc., 944 F.2d at 754 ("[Plaintiff] does not claim any rights under the plan, and does not claim any breach of the plan contract. The promissory estoppel claim does not seek to enforce or modify the terms of the plan . . . ."); Mem'l Hosp. Sys, 904 F.2d at 250 ("[Plaintiff] has brought this state law action in its independent status as a hospital, and [patient's] assignment of benefits is irrelevant to [plaintiff's] right to recover. . . . [Plaintiff] neither seeks benefits from the plan nor claims that the plan acted improperly in processing and denying [plaintiff's] claim. The claim is thus independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations.").

[57] Hospice of Metro Denver, Inc., 944 F.2d at 756; Mem'l Hosp. Sys, 904 F.2d at 249-50.

[58] 904 F.2d at 249 (quoting Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456, 1467-68 (5th Cir. 1986)).

[59] Id. at 250.

[60] 944 F.2d at 756; see also David P. Coldesina, D.D.S., P.C., v. Estate of Simper, 407 F.3d 1126, 1136 (10th Cir. 2005) (explaining that the class of "[c]laims that do not affect the relations among the principal ERISA entities"--and thus escape preemption--"[n]ecessarily" includes claims that affect relations between only one ERISA entity and some outside/non-ERISA entity).

[61] Hospice of Metro Denver, Inc., 944 F.2d at 755; Mem'l Hosp. Sys, 904 F.2d at 247-48.

[62] Hospice of Metro Denver, Inc., 944 F.2d at 753, 755; Mem'l Hosp. Sys, 904 F.2d at 238, 247; see also 29 U.S.C. § 1132(a)(1)(B) (2012) ("A civil action may be brought -- (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").

[63] Hospice of Metro Denver, Inc., 944 F.2d at 755; Mem'l Hosp. Sys, 904 F.2d at 247-48.

[64] 904 F.2d at 247-48.

[65] See Salzer v. SSM Health Care of Okla. Inc., 762 F.3d 1130, 1137-38 (10th Cir. 2014) (permitting a plan beneficiary to bring an ERISA claim against a healthcare provider to enforce rights under his plan). We reiterate, however, that this is not the claim Cates brings in this lawsuit.

[66] David P. Coldesina, D.D.S., P.C., 407 F.3d at 1136 (citing Ingersoll-Rand Co., 498 U.S. at 137).

[67] 904 F.2d at 247-48.

[68] We also note that all we have decided is the sufficiency of Cates's petition at this motion-to-dismiss juncture. Whether the agreements she cites are indeed contracts, what their terms actually require, and all the other elements of her claims remain for the district court to determine on remand.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 4, 846 P.2d 1088, 64 OBJ 334, Great Plains Federal Sav. and Loan Ass'n v. Dabney
Discussed
 2001 OK 21, 24 P.3d 834, 72 OBJ 640, DIGITAL DESIGN GROUP, INC. v. INFORMATION BUILDERS
Discussed
 1964 OK 88, 392 P.2d 737, ARMSTRONG v. GILL
Discussed
 2005 OK 82, 130 P.3d 222, TOMAHAWK RESOURCES, INC. v. CRAVEN
Discussed
 2009 OK 48, 212 P.3d 1210, BOWMAN v. PRESLEY
Discussed
 2014 OK 112, 341 P.3d 673, TUCKER v. THE COCHRAN FIRM-CRIMINAL DEFENSE BIRMINGHAM L.L.C.
Discussed
 2016 OK 35, 374 P.3d 779, DANI v. MILLER
Discussed
 2000 OK 51, 9 P.3d 683, 71 OBJ 1763, KMC Leasing Inc. v. Rockwell-Standard Corp.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 751, Short Title
Discussed
 15 O.S. 761.1, Liability under Consumer Protection Act
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA